NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

———————————

**BYUNGMIN CHAE,**
*Plaintiff-Appellant*

**v.**

**JANET YELLEN, SECRETARY OF THE TREASURY, ALEJANDRO MAYORKAS, SECRETARY OF HOMELAND SECURITY, DEPARTMENT OF THE TREASURY, DEPARTMENT OF HOMELAND SECURITY, UNITED STATES,**
*Defendants-Appellees*

———————————

2022-2017

———————————

Appeal from the United States Court of International Trade in No. 1:20-cv-00316-TMR, Judge Timothy M. Reif.

———————————

Decided: April 25, 2023

———————————

BYUNGMIN CHAE, Elkhorn, NE, pro se.

MARCELLA POWELL, Commercial Litigation Branch, Civil Division, United States Department of Justice, New York, NY, for defendants-appellees. Also represented by

BRIAN M. BOYNTON, AIMEE LEE, PATRICIA M. MCCARTHY, JUSTIN REINHART MILLER; MATHIAS RABINOVITCH, Office of Assistant Chief Counsel, International Trade Litigation, United States Bureau of Customs and Border Protection, New York, NY.

_____

Before NEWMAN, PROST, and HUGHES, *Circuit Judges*.

NEWMAN, *Circuit Judge*.

Appellant Byungmin Chae appeals the decision of the United States Court of International Trade ("CIT"), which sustained the denial of Mr. Chae's application for a customs broker license.[1] The CIT affirmed the ruling of United States Customs and Border Protection ("Customs" or "CBP") that Mr. Chae did not achieve the required passing grade of at least 75 percent on the Customs Broker License Examination ("CBLE"), which Mr. Chae sat for in April 2018. *See* 19 U.S.C. § 1641(b)(2) (stating that the Secretary of the Treasury "may conduct an examination to determine the applicant's knowledge of customs and related laws, regulations and procedures, bookkeeping, accounting, and all other appropriate matters"); 19 C.F.R. § 111.11(a)(4) (establishing "75 percent or higher" as the passing grade on the CBLE). On appellate review, we affirm the decision of the CIT denying Mr. Chae's customs broker license application.[2]

_____

[1]     *Chae v. Yellen*, 579 F. Supp. 3d 1343 (Ct. Int'l Trade 2022) ("CIT Op.").

[2]     The CBLE is administered twice a year.  19 C.F.R. § 111.13(b).  "Applicants who fail the examination and do not receive a passing score can retake the exam without penalty." Sec'y Br. 4 (citing 19 C.F.R. § 111.13(e)).  The record before us does not state whether Mr. Chae has retaken the exam.

BACKGROUND

The CBLE is an 80-question, multiple-choice examination administered by Customs. The directions for the exam state that "**[e]ach question has a single best answer.**" J.A. 413 (Apr. 25, 2018 CBLE, Directions) (emphasis in original). It is an open book examination, and applicants are "responsible for having the following references:"

> Harmonized Tariff Schedule of the United States . . .
>
> Title 19, Code of Federal Regulations . . .
>
> Instructions for Preparation of CBP Form 7501 . . .
>
> Right to Make Entry Directive 3530-002A

*Id.*

The examination is initially scored by Customs. After this initial scoring, 19 C.F.R. § 111.13(f) and 19 U.S.C. § 1641(e) provide a multitiered system of administrative and judicial review. If the passing grade of 75% is not attained, the applicant may request an initial administrative review by the Broker Management Branch of CBP's Office of Trade. *See* 19 C.F.R. § 111.13(f). If the applicant's score remains below 75% after this initial review, the applicant may request a second round of administrative review by the "appropriate Executive Director" of CBP's Office of Trade. *Id.* If an applicant's score remains below 75% after exhausting these two levels of administrative review, the decision to deny a customs broker license may be judicially appealed to the CIT. *See* 19 U.S.C. § 1641(e)(1). If the applicant's requested relief is still not granted, another level of judicial review is available, by appeal to the Court of Appeals for the Federal Circuit. *See* 28 U.S.C. § 1295(a)(5).

Mr. Chae initially received a score of 65% on the April 2018 CBLE. J.A. 330. After being notified of this result, he appealed to CBP's Office of Trade's Broker Management Branch, requesting review of thirteen questions. J.A. 333.

The Broker Management Branch awarded Mr. Chae credit for two additional answers, raising his score to 67.5%. J.A. 351.

Mr. Chae then appealed the Broker Management Branch's decision to the Executive Assistant Commissioner of CBP's Office of Trade, requesting review of the remaining eleven questions for which Mr. Chae was denied credit in his initial administrative appeal. J.A. 354. The Executive Assistant Commissioner awarded Mr. Chae credit for three more of his answers, raising his score to 71.25%. J.A. 398.

Mr. Chae then judicially appealed to the CIT, seeking review of five of the remaining questions for which he had not received credit.[3] CIT Op. at 1348. The CIT granted Mr. Chae credit for one question, raising his score to 72.5%. CIT Op. at 1353. However, his score remained below 75%.

Mr. Chae appeals to our court. He focuses on three of the remaining questions for which he was denied credit, pointing out that a decision in his favor on two of these questions will raise his score to the passing grade 75%. Chae Br. 3. At issue are Questions 5, 27, and 33 of the April 2018 CBLE.

STANDARD OF REVIEW

In assessing CBP's ultimate licensing decision, "[c]onsistent with the broad powers vested in the Secretary [of the Treasury] for licensing customs brokers under 19 U.S.C. § 1641, the denial of a license can be overturned only if the decision was arbitrary, capricious, an abuse of

---

[3]     Mr. Chae initially appealed the Executive Assistant Commissioner's decision to the CIT requesting review of seven of the remaining questions for which he had not received credit. J.A. 296. However, Mr. Chae withdrew his challenges to two of those questions. CIT Op. at 1348 n.3.

discretion, or otherwise not in accordance with the law." *Kenny v. Snow*, 401 F.3d 1359, 1361 (Fed. Cir. 2005) (citing 5 U.S.C. § 706).

Within that framework, decisions as to individual CBLE questions are reviewed for support by substantial evidence, as detailed in *Kenny*:

> Underpinning a decision to deny a license arising from an applicant's failure to pass the licensing examination are factual determinations grounded in examination administration issues—[including] the allowance of credit for answers other than the official answer—which are subject to limited judicial review because "[t]he findings of the Secretary [of the Treasury] as to the facts, if supported by substantial evidence, shall be conclusive."

401 F.3d at 1361 (quoting 19 U.S.C § 1641(e)(3)). In *Kenny*, we also wrote that "[o]n questions of substantial evidence, we review the decisions of the Court of International Trade 'by stepping into [its] shoes . . . and duplicating its review.'" *Id.* (quoting *Taiwan Semiconductor Indus. Ass'n v. Micron Tech., Inc.*, 266 F.3d 1339, 1343 (Fed. Cir. 2001)).

The CIT has granted examinees credit on appeal when:

> (1) the omission of relevant statutory or regulatory language would result in the question falsely characterizing the applicable provision, (2) the inclusion or omission of language would result in "the question's incorrect use of" a relevant term, or (3) the inclusion or omission of language would result in the question "not contain[ing] sufficient information [for an applicant] to choose an answer."

CIT Op. at 1353 (first citing *Harak v. United States*, 30 Ct. Int'l Trade 908, 928 (2006); and then quoting *O'Quinn v. United States*, 24 Ct. Int'l Trade 324, 328, 100 F. Supp. 2d 1136, 1140 (2000)).

DISCUSSION

To achieve a passing score of at least 75%, Mr. Chae must obtain credit for at least two of the three questions discussed in this appeal.  Mr. Chae argues that there is more than one correct answer among the multiple choices for Question 5, that Question 27 was not sufficiently clear, and that Question 33 does not provide sufficient information to reach the answer selected by Customs.  *See* Chae Br. 1–2.  Conversely, the appellees maintain that there is a single "best answer" to each question.  Sec'y Br. 13, 15, 19.

I.

### *Question 5*

Question 5 of the April 2018 CBLE asks:

**5.**  Which of the following customs transactions is **<u>NOT</u>** required to be performed by a licensed customs broker?

A.  Temporary Importation under Bond

B.  Transportation in bond

C.  Permanent Exhibition Bond

D.  Trade Fair Entry

E.  Foreign Trade Zone Entry

J.A. 417 (emphasis in original).

1. Parties' Arguments

Mr. Chae selected choice E.  Customs designated choice B as the correct answer.

Mr. Chae does not dispute that choice B is a correct answer; he argues that choice E is also correct.  He argues that "E. Foreign Trade Zone Entry" is correct because "there is no 'foreign trade zone entry' term itself in the regulation," and therefore "there is no reason to believe the

entry here is the type of port of entry as claimed by CBP." Chae Br. 1.  Mr. Chae asserts that, because the term does not exist within Title 19 of the C.F.R., examinees who are new to the industry will interpret the term to mean "the act of bringing [goods] to the U.S. territory," also noting that "some shipments can be cleared if you claim your own goods" under 19 C.F.R. § 111.2(a)(2)(i).  Chae Br. 1.

At the CIT, Mr. Chae argued that the "common understanding" of the term "entry" could reasonably refer to the process of "admission" set forth in 19 C.F.R. § 146.32(a)(1). *See* CIT Op. at 1354–55.

The appellees argue that 19 C.F.R. § 111.2(a) supports their position.  *See* Sec'y Br. 13–14.  Section 111.2(a)(1) recites a general requirement for a person to obtain a customs broker license to transact customs business:

> General.  Except as otherwise provided in paragraph (a)(2) of this section, a person must obtain the license provided for in this part in order to transact customs business as a broker.

19 C.F.R. § 111.2(a)(1).  To support CBP's selected answer, appellees point to § 111.2(a)(2), which lists "[t]ransactions for which license is not required" as follows:

> (i)  For one's own account. . . .
>
> (ii)  As [an] employee of [a] broker . . . .
>
> (iii) Marine transactions. . . .
>
> (iv) Transportation in bond. . . .
>
> (v)  Noncommercial shipments. . . .
>
> (vi) Foreign trade zone activities. . . .

19 C.F.R. § 111.2(a)(2).

To rebut Mr. Chae's contentions, the appellees point to 19 C.F.R. § 146.62, titled "Entry" within Part 146 of Title 19 governing "Foreign-Trade Zones," and argue that a

"question or answer choice need not reflect the precise wording of the regulation in order to be valid." Sec'y Br. 13–14 (quoting *Harak*, 30 Ct. Int'l Tr. at 922). The appellees assert that "E. Foreign Trade Zone Entry" reasonably refers to making entry of merchandise from a foreign trade zone as governed by § 146.62, and that this type of entry is not exempted from the license requirement set forth in 19 C.F.R. § 111.2(a)(1).

### 2. Analysis

Mr. Chae argued to the CIT that "E. Foreign Trade Zone Entry" in Question 5 does not reasonably clarify whether it is referring to entry *into* a foreign trade zone as governed by 19 C.F.R. § 146.32(a)(1) or entry *from* a foreign trade zone as governed by 19 C.F.R. § 146.62. Because the parties "agree[d] that the process of admission set forth in [19 C.F.R. § 146.32(a)(1)] does not constitute 'customs business' that is required to be performed by a licensed customs broker," CIT Op. at 1354, we find that CBP's decision to deny Mr. Chae credit for Question 5 is not supported by substantial evidence.

However, granting Mr. Chae credit for his answer to Question 5 does not, in and of itself, provide the requisite passing score on the CBLE.

## II.

### *Question 27*

Question 27 of the April 2018 CBLE asks:

**27.** Which of the following mail articles are not subject to examination or inspection by Customs?

A. Bona-fide gifts with an aggregate fair retail value not exceeding $800 in the country of shipment

B. Mail packages addressed to officials of the U.S. Government containing merchandise

C. Diplomatic pouches bearing the official seal of France and certified as only containing documents

D. Personal and household effects of military and civilian personnel returning to the United States upon the completion of extended duty abroad

E. Plant material imported by mail for purposes of immediate exportation by mail

J.A. 425.

### 1. Parties' Arguments

Mr. Chae selected choice B. Customs designated choice C as the correct answer.

Mr. Chae argues that Question 27 was not sufficiently clear. He states that "cbp can not [sic] assume all packages quoted in the exam are all international," so "[a package's origin] is not clear if it was not provided." Chae Br. 2. Mr. Chae argues that a person taking the examination could reasonably infer that answer B is referring to packages of domestic origin. Mr. Chae further argues that "some merchandises are allowed to pass free of duty without issuing an entry which is not subject to examination or inspection by CBP" under 19 C.F.R. § 145.37, noting that "without issuing an entry cbp can still inspect" is not in Title 19 of the C.F.R. Chae Br. 2.

Section 145.37 specifies three classes of merchandise that "shall be passed free of duty without issuing an entry":

(a) ***Mail articles for copyright.*** Mail articles marked for copyright which are addressed to the Library of Congress, to the U.S. Copyright Office, or to the office of the Register of Copyrights, Washington, DC . . .

(b) ***Books, engravings, and other articles.*** [Certain books, engravings, etchings, and other articles] when they are addressed to the Library of

Congress or any department or agency of the U.S. Government.

(c) *Official government documents.* Other mail articles addressed to offices or officials of the U.S. Government, believed to contain only official documents, [though] [s]uch mail articles, when believed to contain merchandise, shall be treated in the same manner as other mail articles of merchandise so addressed.

19 C.F.R. § 145.37.

The appellees argue that CBP's designated best answer is supported by other portions of 19 C.F.R. § 145, including:

§ 145.2(b) *Generally*. All mail arriving from outside the Customs territory of the United States which is to be delivered within the Customs territory of the United States . . . is subject to Customs examination . . .

§ 145.38 Mail articles bearing the official seal of a foreign government with which the United States has diplomatic relations, accompanied by certificates bearing such seal to the effect that they contain only official communications or documents, shall be admitted free of duty without Customs examination.

The appellees argue that it is unreasonable for an examinee to argue that the examination question could relate to domestic shipments, for the purpose of the exam is "to determine the applicant's knowledge of customs and related laws, regulations and procedures, bookkeeping, accounting, and all other appropriate matters." *Rudloff v. United States*, 19 Ct. Int'l Tr. 1245, 1246–47 (1995) (quoting 19 U.S.C. § 1641(b)(2)). The appellees state that "[a] reasonable examinee would presume that all answer choices concerned an importation of mail articles into the United States." Sec'y Br. 16.

The appellees then argue that Mr. Chae's reliance on 19 C.F.R. § 145.37 is "misplaced," as section 145.37(c) "distinguishes between mail articles that contain only official documents and mail articles that contain merchandise." Sec'y Br. 16. The appellees point out that, under section 145.37(c), mail articles containing *only official documents* are passed free of duty without issuing an entry, while articles containing *merchandise* shall be treated in the same manner as other mail articles of merchandise so addressed. *See* 19 C.F.R. § 145.37(c) *supra*. Thus the packages containing merchandise mentioned in choice B are subject to Customs examination in accordance with 19 C.F.R. § 145.2(b).

The appellees also argue that section 145.37(c) is not responsive to Question 27, asserting that section 145.37(c) "does not address whether certain mail articles are subject to 'examination' by CBP, but rather concerns how the articles should be treated for entry and duty purposes." Sec'y. Br. 17.

## 2. Analysis

The CIT concluded that "Customs' decision to deny [Mr. Chae] credit for Question 27 was supported by substantial evidence." CIT Op. at 1361. The CIT determined that "Customs determined reasonably that Question 27 presumes that the mail articles described in the question are imported into the United States" based on the purpose of the CBLE as recited in 19 U.S.C. § 1641(b)(2) and the references recommended to the examinees in the CBLE's directions. *Id.* at 1360. The CIT also determined that 19 C.F.R. § 145.37(c) distinguishes mail articles that contain official documents from those that contain merchandise. *Id.* at 1361. The CIT further held that:

> 19 C.F.R. § 145.37 . . . is not responsive to question 27, which instructs the applicant to determine "[w]hich of the following mail articles are not *subject to examination or inspection by Customs*."

> 19 C.F.R. § 145.37 does not address whether certain mail articles are subject to "examination" or "inspection" by Customs. Rather, this provision addresses whether the articles "shall be passed free of duty without issuing an entry." Whether an article "shall be passed free of duty" is a distinct question from whether an article "shall be subject to examination or inspection by Customs." On this basis, 19 C.F.R. § 145.37 does not support plaintiff's selection of answer choice (B).

CIT Op. at 1361 (emphasis in original) (citations omitted).

We agree with the CIT that the regulations are sufficiently clear, and that choice B is not a reasonable selection in light of 19 C.F.R. §§ 145.2(b), 145.37(c), and 145.38. Section 145.2(b) states that "[a]ll mail arriving from outside the Customs territory of the United States which is to be delivered within the Customs territory of the United States . . . is subject to Customs examination." Under § 145.37(c), "mail articles [addressed to offices or officials of the U.S. Government], when believed to contain merchandise, shall be treated in the same manner as other mail articles of merchandise so addressed." Thus the packages in choice B cannot be exempted by section 145.37(c) as Mr. Chae argues, and must be subject to Customs examination under section 145.2(b), regardless of any difference in meaning between "shall be passed free of duty" and "examination or inspection by Customs." Section 145.38 directly supports answer choice C.

Mr. Chae's additional arguments do not negate the conclusion that choice C is the best answer. CBP's decision to deny Mr. Chae credit for his answer to Question 27 is supported by substantial evidence, and thus the CIT's decision as to this question is affirmed.

III.

### *Question 33*

Question 33 of the April 2018 CBLE asks:

**33.** What is the **CLASSIFICATION** of current-production wall art depicting abstract flowers and birds that is mechanically printed, via lithography, onto sheets of paper, the paper measuring .35 mm in thickness that have been permanently mounted onto a backing of .50 mm thick paperboard?

A. 4911.91.2040

B. 4911.91.3000

C. 4911.99.6000

D. 9701.10.0000

E. 9702.00.0000

J.A. 426 (emphasis in original).

### 1. Parties' Arguments

Mr. Chae selected choice E. Customs designated choice B as the correct answer.

Mr. Chae argues that the wording of Question 33 does not provide sufficient information to identify the correct answer. Chae Br. 2 (pointing to ambiguity in Question 33, stating that "no further detail is identified"). Mr. Chae focuses on the term "current-production," arguing that the term should be construed as describing a "process which was not discontinued" and that Question 33 identifies "no further detail on this shipment." Chae Br. 2. Accordingly, he asserts that the production date of the lithograph in Question 33 is ambiguous. The classification that Mr. Chae selected, 9702.00.0000, covers "[o]riginal engravings, prints and lithographs, framed or not framed," with no mention of the age of the products. Harmonized Tariff Schedule of the United States (2017) Basic Edition ("HTSUS"), Chapter 97, p. 97-2.

The appellees describe this question as "evaluat[ing] the ability of an applicant to interpret and apply the HTSUS" and its General Rules of Interpretation ("GRIs"). Sec'y Br. 18 (quoting CIT Op. at 1363). The GRIs are principles that govern the classification of goods under the HTSUS and must be applied in numerical order. *See BASF Corp. v. United States*, 482 F.3d 1324, 1325–26. GRI 1 states that "classification [of goods] shall be determined according to the terms of the headings and any relative section or chapter notes." HTSUS, GRIs, GN p.1. Furthermore, we have written that "[s]ection and chapter notes 'are not optional interpretive rules, but are statutory law, codified at 19 U.S.C. § 1202.'" *Aves. in Leather, Inc. v. United States*, 423 F.3d 1326, 1333 (Fed. Cir. 2005) (quoting *Park B. Smith, Ltd. v. United States*, 347 F.3d 922, 927 (Fed. Cir. 2003).

The appellees support CBP's designation of choice B as the best answer by citing HTSUS 4911.91.3000, which covers:

> Other printed matter, including printed pictures and photographs: Other: Pictures, designs and photographs: Printed not over 20 years at time of importation: Other: Lithographs on paper or paperboard: Over 0.51 mm in thickness.

HTSUS, Chapter 49, p. 49-4.

The appellees note that the lithograph in Question 33 is described as wall art mechanically printed onto sheets of "paper measuring .35 mm in thickness that have been permanently mounted onto a backing of .50 mm thick paperboard." J.A. 426; *see also* Sec'y Br. 18. Thus "the combined thickness of the lithograph and its mounting is 0.85 mm," Sec'y Br. 19, which is the thickness that should be used for classification purposes, as explained in HTSUS Chapter 49, Additional U.S. Note 1:

> 1.  For the purposes of determining the classifica-
> tion of printed matter produced in whole or in part
> by a lithographic process, the thickness of such
> printed matter is that of the thinnest paper con-
> tained therein, except that the thickness of a per-
> manently mounted lithograph is the combined
> thickness of the lithograph and its mounting.

HTSUS, Chapter 49, p. 49-1. Thus the appellees argue that
the wall art in Question 33 is a lithograph "[o]ver 0.51 mm
in thickness." *Id.* at p. 49-4; *see also* Sec'y Br. 19.

To rebut Mr. Chae's contentions, the appellees argue
that "the term 'current production' refers to the time in
which the merchandise was printed, and, thus, reasonably
means that the printed lithography is not over 20 years
old." Sec'y Br. 19–20. The appellees state that "[t]he ques-
tion does not contain the phrase 'current production pro-
cess' and '[e]xaminees cannot be permitted to reach
conclusions by taking a portion of the question and formu-
lating their own factual scenarios.'" *Id.* at 20 (quoting
*Dunn-Heiser v. United States*, 29 Ct. Int'l Tr. 552, 559–60
(2005)). Appellees also note that "[e]xaminees . . . are not
permitted to 'unilaterally rewrite the question.'" *Id.* (quot-
ing *Dunn-Heiser*, 29 Ct. Int'l Tr. at 560).

The appellees also argue Mr. Chae's answer, choice E,
cannot be correct considering HTSUS Chapter 97, Note 2:

> 2.  For the purposes of heading 9702, the expression
> "original engravings, prints and lithographs"
> means impressions produced directly, in black and
> white or in color, of one or of several plates wholly
> executed by hand by the artist, irrespective of the
> process or of the material employed by him, but not
> including any mechanical or photomechanical pro-
> cess.

HTSUS, Chapter 97, p. 97-1 (emphasis in original).

2. Analysis

HTSUS Chapter 97, Note 2 explicitly excludes lithographs produced by "any mechanical or photomechanical process" from heading 9702. *Id.* Although the description of "current-production" strains the application of "[p]rinted not over 20 years at time of importation," it is not inconsistent. J.A. 426; HTSUS, Chapter 49, p. 49-4. We agree with the CIT "that Customs' decision to deny [Mr. Chae] credit for [Q]uestion 33 was supported by substantial evidence." CIT. Op. at 1364.

We conclude that CBP's decision to deny Mr. Chae credit for his answer to Question 33 is supported by substantial evidence, and thus the CIT's decision as to this question is affirmed.

CONCLUSION

We affirm the CIT's decision on Questions 27 and 33. Thus even though we find CBP's denial of credit for Question 5 unsupported by substantial evidence, Mr. Chae cannot attain a passing grade of at least 75%. Absence of a passing grade on the CBLE constitutes lawful grounds for denial of Mr. Chae's application for a customs broker license. *See Kenny*, 401 F.3d at 1361 ("Among the lawful grounds for denying a license is the failure to pass the licensing examination." (citing 19 U.S.C. § 1641(b)(2); 19 C.F.R. § 111.11(a)(4); 19 C.F.R. § 111.16(b)(2))). CBP's denial of Mr. Chae's application is not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. The CIT's decision is affirmed.

**AFFIRMED**

COSTS

Each party shall bear its costs.