Re: BYUNGMIN CHAE Pet Cert in my possession

I don't know where to begin, but due to reckless & deliberately indiff conditions of pretrial detainee confinement by Tarrant Co Sheriff... I've been given two brown sacks with my name, but having the above refer. documents enclosed. I'm writing you & sending 1 of 40 pet certs, due to this being the last court that reviewed the claims and hopeful you have appropriate contact info to fwd the docs to him.

Yes, I know; why can't I just give them to Sheriff Deputy? That's a great question & I'm still asking, but no one shall take custody of the property and even filed a grievance & sent 3 requests to administration. I suppose in a perfect world; the Northern Dist of Texas would be enforcing it's jurisdiction, enjoin the Sheriff to numerous 5th Cir & SCOTUS precedents and holding the Sheriff accountable... there would be a much greater level of accountability of US Const protections, and the Sheriff subbornates would be properly trained, supervised & disciplined.

I've also sent word to US Postal Inspector months ago about Obstruction of mail, tampering and well, destroying mail for amorphous reasoning... Maybe you could demand Postal inspector come visit me to begin this investigation? Anyway, I'd appreciate your efforts to relieve me of this 20#s of paperwork that does not belong to me.

Respectfully

/s/ Joseph Dingler

APPEAL NO. -

IN THE SUPREME COURT OF THE UNITED STATES

JUNE TERM, 2023

———————————

**BYUNGMIN CHAE**
**Petitioner, Appellant**

V.

**JANET YELLEN, THE UNITED STATES SECRETARY OF THE TREASURY**
**ALEJANDRO MAYORKAS, THE UNITED STATES SECRETARY OF THE**
**HOMELAND SECURITY,**
**THE UNITED STATES DEPARTMENT OF THE TREASURY**
**UNITED STATES DEPARTMENT OF THE HOMELAND SECURITY,**
**AND THE UNITED STATES**
**Respondents, Appellees**

———————————

**PETITIONER'S REPLY BRIEF ON THE PETITION FOR WRIT OF**
**CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE**
**FEDERAL CIRCUIT**

RECEIVED

SEP 1 1 2023

United States Court of Appeals
For the Federal Circuit

**BYUNGMIN CHAE**
**3638 S.205TH STREET**
**ELKHORN, NE 68022**
**TEL: 646.678.0066**
**EMAIL: benchaeny@gmail.com**

**CAPITAL CASE**

**QUESTION PRESENTED FOR REVIEW**

Which of the following mail articles are not subject to examination or inspection by Customs?

A.  Bona-fide gifts with an aggregate fair retail value not exceeding $800 in the country of shipment

B.  Mail packages addressed to officials of the U.S. Government containing Merchandise

C.  Diplomatic pouches bearing the official seal of France and certified as only containing documents

D.  Personal and household effects of military and civilian personnel returning to the United States upon the completion of extended duty abroad

E.  Plant material imported by mail for purposes of immediate exportation by mail

## LIST OF ALL PARTIES

PETITIONER:
BYUNGMIN CHAE
EXAMINEE FOR THE CUSTOMS BROKER LICENSE IN THE MONTH OF
APRIL 2018


RESPONDENT:
JANET YELLEN, THE UNITED STATES SECRETARY OF THE TREASURY
ALEJANDRO MAYORKAS, THE UNITED STATES SECRETARY OF THE
HOMELAND SECURITY
THE UNITED STATES DEPARTMENT OF THE TREASURY
THE UNITED STATES DEPARTMENT OF THE HOMELAND SECURITY,
AND THE UNITED STATES


## LIST OF RELATED PROCEEDINGS

1. THE UNITED STATES COURT OF INTERNATIONAL TRADE
   COURT NO. 20-00316
   BYUNGMIN CHAE v. JANET YELLEN THE DEPARTMENT OF THE
   TREASURY, ALEJANDRO MAYORKAS, THE DEPARTMENT OF
   HOMELAND SECURITY AND THE UNITED STATES
   JUDGEMENT ENTERED: JUNE 6, 2022

2. THE UNITED STATES COURT OF APPEALS FOR FEDERAL
   CIRCUIT
   COURT NO. 22-2017
   BYUNGMIN CHAE v. JANET YELLEN THE DEPARTMENT OF THE
   TREASURY, ALEJANDRO MAYORKAS, THE DEPARTMENT OF
   HOMELAND SECURITY AND THE UNITED STATES
   JUDGEMENT ENTERED: APRIL 25, 2023

3. THE UNITED STATES COURT OF APPEALS FOR FEDERAL
   CIRCUIT
   COURT NO. 22-2017
   BYUNGMIN CHAE v. JANET YELLEN THE DEPARTMENT OF THE
   TREASURY, ALEJANDRO MAYORKAS, THE DEPARTMENT OF
   HOMELAND SECURITY AND THE UNITED STATES
   JUDGEMENT ON PETITION FOR PANEL REHEARING AND
   REHEARING EN BANC ENTERED: JUNE 12, 2023

# TABLE OF CONTENTS

| | | |
|---|---|---|
| i) | Question presented for review | 1 |
| ii) | List of All Parties | 2 |
| iii) | List of Related Proceedings | 2 |
| iv) | Table of Cited Authorities | 4 |
| v) | Citations of Opinions and Orders | 5 |
| vi) | Basis for Jurisdiction | 6 |
| vii) | Constitutional Provisions and Statues Involved | 6 |
| viii) | Statement of the Case | 7 |
| ix) | Reply Arguments | 10 |
| | 1. The Unavailability | 12 |
| | 2. The Inapplicability | 12 |
| | 3. The Exception | 14 |
| x) | Conclusion | 15 |
| xi) | Appendix | 16 |

## <u>TABLE OF CITED AUTHORITIES</u>

**CASES**
<u>Carrierv.U.S.</u>,20CIT227,228,Slip.Op.96-36(Feb.13,1996)                    10
<u>Dunn-Heiserv.U.S.</u>,374F.Supp.2d1276,1280(CITMay31,2005)          10
<u>Germscheidv.U.S.</u>,19CIT706,708-9,888F.Supp.1197,1200(1995)       11
<u>Kennyv.Snow</u>,401F.3d1359,1361(Fed.Cir.2005)                             10
<u>O'Quinnv.U.S.</u>,24CIT324,325,100F.Supp.2d1136,1138(2000)          7,10


**STATUTES**
19U.S.C.§1641(b)(2)                                                              6.10
19U.S.C.§1641(e)(3)                                                               11

**REGULATIONS**
19C.F.R.§111.11(a)(4)                                                             10
19C.F.R. § 111.16                                                                  10
19C.F.R. § 145.2.(b)(3)                                                       6,13,14
19C.F.R. § 145.37 (c)                                                         7,12,13
19C.F.R.§145.38                                                                    13

## CITATIONS OF OPINIONS AND ORDERS

1.  The opinion of the Court of International Trade Appeals appears on that
    court's web site as Slip Op. 22-59 as "chae vs secretary of the treasury"
    https://www.cit.uscourts.gov/content/slip-opinions-2022


2.  The order of the court of appeals for the federal circuit appears on that court's
    web site as Court No 22-2017 with the docket number 29 dated on April 25
    2023
    https://ecf.cafc.uscourts.gov/n/beam/servlet/TransportRoom


3.  The order of the court of appeals for the federal circuit appears on that court's
    web site as Court No 22-2017 with the docket number 35 dated on June 12
    2023
    https://ecf.cafc.uscourts.gov/n/beam/servlet/TransportRoom

## BASIS FOR JURISDICTION

1. Byungmin Chae seeks to have the Supreme Court review a judgment of a panel of the United States Court of Appeals for the federal circuit , which was entered on April 25, 2023

2. Byungmin Chae timely filed a Petition for Writ of Certiorari, now pending before this Court.

3. Jurisdiction is conferred upon this Court to review the court of appeals' judgment by 19 U.S.C § 1641(b)(2).

## CONSTITUTIONAL PROVISIONS AND STATUES INVOLVED

1. 19 C.F.R. 145.2 (B) (3) states:

Letter class mail known or believed to contain only correspondence or documents addressed to diplomatic missions, consular posts, or the officers thereof, or to international organizations designated by the president as public international organizations pursuant to the International Organizations Act. Mail, other than letter class mail, addressed to the designated international organizations is subject to Customs examination except where the organization certifies under its official seal that the mail contains no dutiable or prohibited articles. Any customs examination made shall, upon request of the addressee international organization, take place in the presence of an appropriate representative of that organization.

6

<u>Byungmin Chae replies in particular on the exception clause.</u>

2. 19 C.F.R. 145.37 ( C ) states:

Official government documents:  Other mail articles addressed to the offices

or officials of the U.S. government, believed to contain only official documents,

shall be passed free of duty without issuing an entry.  Such mail articles,

when believed to contain merchandise, shall be treated in the same manner

as other mail articles of merchandise so addressed.

<u>Byungmin Chae replies in particular on the mail articles with the official</u>

<u>documents of the government and/or the merchandise clause.</u>

## STATEMENT OF THE CASE

This case involves the appeal of the administrative decision of the U.S.

Customs and Border Protection ("CBP") denying Plaintiff's request for the credit

for the question number 27 in the Customs Broker License Examination

("CBLE") dated on April 25, 2018.

In reviewing the legal question in the CBLE, this Court reviews the basis

of Customs' decision to deny credit in accordance with the Administrative

Procedure Act ("APA"). <u>O'Quinn v. United States</u>, 24 C.I.T. 324, 325 (2000).

Such a review ensures that the agency engages in reasoned decision-making in

grading the exam.<u>Id</u>. For the reasons set forth in the brief below, the record

lacks substantial evidence to support CBP's decision to deny Plaintiff credit for the question at issue in this matter. Therefore, Plaintiff requests that the Supreme Court to review the question number 27 of the Customs Exam administered on the April 25, 2018 and to award the Plaintiff with the credit for the question.

On April 25, 2018, Plaintiff sat for the CBLE in Flushing, New York. On May 18, 2018, Plaintiff was informed that he had received a score of 65% on the Exam and had therefore not achieved the requisite minimum passing score of 75%. Subsequently, on June 18, 2018, Plaintiff timely appealed thirteen of the questions from the April 2018 Exam, namely question numbers 2, 5, 24, 27, 28, 33, 39, 43, 50, 54, 57, 68, and 77.  On August 23, 2018, Plaintiff received the written notification that he, along with other applicants of the April 2018 exam, received credit for three additional questions, namely questions 28, 66, and 68. Because Plaintiff already had a correct answer to one of those questions, question 66, he received two additional correct answers, raising his score to 67.5%.

By way of the letter dated on August 23, 2018 Plaintiff was also informed that he did not receive credit for any of the questions originally appealed. On September 28, 2018, Plaintiff filed a timely appeal of eleven questions to the Assistant Commissioner, Office of Trade, as instructed by the CBP's letter. Specifically, Plaintiff appealed questions, 2, 5, 24, 27, 33, 39, 43, 50, 54, 57, and 77. On October 29, 2019, the CBP emailed Plaintiff a copy of a letter dated on May 23,

2019, granting his appeal on three questions (2, 24, and 54), but still leaving him short of a passing score.

Plaintiff's score was 71.25% and he still needed to require a score of 75% to pass. On October 30, 2019, Plaintiff asked the CBP how he could appeal the May 23, 2019, decision. Plaintiff was informed that he had no other recourse. Specifically, Plaintiff was told, "[t]here was no 3rd appeal."As a result of this false information from the CBP, Plaintiff took no immediate action, believing he had no further recourse. Contrary to this false information, Plaintiff subsequently learned that the information provided by CBP was incorrect and that he could appeal to the Court of International Trade ("CIT").

Consequently, on March 4, 2020, Plaintiff filed a petition with the CIT seeking the review of the previous denials of his appeals. Following motion practice, the Court of the International Trade possessed the jurisdiction as this case involved a challenge to the denial of the customs broker license by U.S. Customs and Border Protection and entered an order permitting Plaintiff one credit out of 5 questions on the day of June 6, 2022.     Shortly after the announcement of the decision by the Court of International Trade the plaintiff filed the additional petition with the United States Court of Appeals for the Federal Circuit to further review the denials of the appeals on the day of July 11, 2022.     Following the additional motion practices the Court of the Appeals for the Federal Circuit entered an order permitting plaintiff one credit out of 3 questions on the day of April 25, 2023.

However, the plaintiff would like to bring the issue of the credit from the question No. 27 on the April 2018 Customs Broker License examination to the attention of the Supreme Court to diagnose and challenge the CBP's decision to deny the plaintiff's credit.

## REPLY ARGUMENTS

The denial of a broker's license will be overturned if the decision was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. <u>Kenny v. Snow</u>, 401 F.3d 1359, 1361 (Fed.Cir. 2005). A final administrative decision by the Secretary denying a Customs broker's license will be set aside if it is not supported by substantial evidence. <u>Carrier v. U.S.</u>, 20 CIT 227, 228, Slip. Op. 96-36 (Feb. 13, 1996).

A license may be denied if the applicant fails to meet certain basic requirements. 19C.F.R. § 111.16. One of the requirements is establishing that the applicant has sufficient knowledge of customs and related laws and regulations and procedures as evidenced by attaining a passing grade of 75% or higher on a written examination. 19 U.S.C.§ 1641(b)(2). <u>See also</u>, 19 C.F.R. § 111.11(a)(4). However, "[t]he express objective of the customs broker license exam is to gauge an applicant's command of Customs' position on the relevant rules and regulations." <u>Dunn-Heiser v. U.S.</u>, 374 F.Supp.2d 1276, 1280 (CIT May 31, 2005). The agency must have engaged in reasoned decision-making in grading the exam. <u>O'Quinn v. U.S.</u>, 24 CIT 324, 325, 100 F.Supp.2d 1136, 1138 (2000).

## A. The Failure to Credit Plaintiff's Answers to the Challenged Question Is Not Supported by Substantial Evidence.

In order for the findings of the Secretary to be upheld, they must be supported by substantial evidence. 19 U.S.C. § 1641(e)(3). "Substantial evidence" is more than a mere scintilla of evidence. Germscheid v. U.S., 19 CIT 706, 708-9, 888 F.Supp. 1197, 1200 (1995). It is that which a reasonable person would accept as adequate to support a conclusion. Id.

### 1. Question 27

Plaintiff appeals the denial of credit for his response to Question 27 of the April 2018 CBLE.

Question 27 states:

> Which of the following mail articles are not subject to examination or inspection by customs?
>
> A. Bona fide gifts with an aggregate fair retail value not exceeding $800 in the country of shipment
> B. Mail packages addressed to officials of the U.S Government containing merchandise
> C. Diplomatic pouches bearing the official seal of France and certified as only containing documents
> D. Personal and household effects of military and civilian personnel returning to the United States upon the completion of extended duty abroad
> E. Plant material imported by mail for purposes of immediate exportation by mail

A. Plaintiff answered "B" on Question 27 on the exam. Customs' official answer to Question 27 on the exam is "C". Plaintiff contends there are multiple correct answers to this question. While answer "C" is accurate, Plaintiff's answer, choice "B", is also accurate under the following reasons.

## 1) **The Unavailability**

First, the question does not indicate where the mail packages are coming from like the CBP's answer. The CBP's answer choice C clearly indicates the country of origin " official seal of France" and this is how the correct answer has to be to justify but the answer choice B has no country of origin like the correct answer and requires the presumption as claimed by Customs and Border Protection(CBP) that all packages described in the exam are all international outside of the U.S. territory, which you cannot find anywhere in the CFR 19 regulation and any question in the exam should not be based on the presumption but should be based on the facts of statements in the regulation. This is how the plaintiff claims it is not clear if the mail packages quoted in the choice B of question no. 27 in the exam could be either domestic or international origin. If the CBP used the name of the country "France" in the answer choice C to demonstrate the diplomatic relationship with the United States they should have paid the same attention to the choice B of the question to identify the country of origin and clear the misunderstanding.

## 2) **The Inapplicability**

Second, in the answer choice B of the question 27 "the mail packages addressed to the officials of the U.S. government containing merchandise" are different from the one in the 19 CFR 145.37 (c) in nature on which the court of

appeal for the federal circuit based its decision and here is the regulation 19 CFR 145.37 (c)

***Official Government documents.*** Other mail articles addressed to offices or officials of the U.S. Government, believed to contain only official documents, shall be passed free of duty without issuing an entry. **<u>Such mail articles</u>**, when believed to contain merchandise, shall be treated in the same manner as other mail articles of merchandise so addressed.

As quoted in the decision of the court of the appeals for the federal circuit on page 12 the court agrees with the CIT that the regulations are sufficiently clear in the light of 10 CFR 145.2(b), 145.37(c) and 145.38. because the mail packages described in the 19 CFR 145.37 (C) are the ones which are believed to have only official documents but these packages are believed and discovered to contain merchandise and these packages shall be treated in the same manner as other mail articles of merchandise addressed.

<u>But please take a close look at the highlighted part "such mail articles" as quoted above. These mail packages include both the official documents and merchandise.</u>

However, the choice B of the question 27 did not include any official documents but just included the merchandise only. And this is why you can not apply the regulation of 19 CFR 145.37 (c).

## 3) <u>The Exception</u>

Thirdly, as noted previously in my statement to lower courts, the mail packages in the choice of the question 27 does not specify who and what type of merchandise are included in the mail article. Here is the regulation 19 CFR 145. 2 (B) (3).

(3) Letter class mail known or believed to contain only correspondence or
   documents addressed to diplomatic missions, consular posts, or the officers
   thereof, or to international organizations designated by the president as public
   international organizations pursuant to the International Organizations Act.
   <u>Mail, other than letter class mail, addressed to the designated international
   organizations is subject to Customs examination except where the organization
   certifies under its official seal that the mail contains no dutiable or prohibited
   articles.</u> Any customs examination made shall, upon request of the addressee
   international organization, take place in the presence of an appropriate
   representative of that organization..

As noted in 19 CFR 145.2 (B) (3) above mail articles addressed to the designated international organizations is not subject to the customs examination if the organization certifies the mail article has no dutiable or prohibited articles under its official seal. For example, the U.S. ambassador to the United Nations, which is

the international organization, is the official of the U.S. government and may contain some merchandise such as newspaper or magazines from other US ambassador offices worldwide in their mail packages either by in United Nations's own official certified seal or by such as the diplomatic pouch of the Department of the State for their record keeping or military intelligence purposes.

Based on the foregoing, there is no substantial evidence in support of the denial of Plaintiff's challenge to the denial of credit for his response to this question. Credit should be given for the question answered by Plaintiff where there are multiple correct answers amongst the choices. Refusing to provide Plaintiff credit for his answer to Question 27 is arbitrary, unreasonable, and capricious as Plaintiff has demonstrated (a) that the question was at best ambiguous, and (b) by his explanation that Plaintiff understands the CBP's position on relevant rules and regulations.

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiff's motion for Judgment on the Record and remand the case to the U.S. Customs and Border Protection with directions to allow credit for Plaintiff's answers to questions number 27 of the April 2018 Customs Broker License Examination.

## CERTIFICATE OF COMPLIANCE

No.

### BYUNGMIN CHAE
**Petitioner, Appellant**

### V.

**JANET YELLEN, THE UNITED STATES SECRETARY OF THE TREASURY
ALEJANDRO MAYORKAS, THE UNITED STATES SECRETARY OF THE
HOMELAND SECURITY,
THE UNITED STATES DEPARTMENT OF THE TREASURY
UNITED STATES DEPARTMENT OF THE HOMELAND SECURITY,
AND THE UNITED STATES
Respondents, Appellees**

As required by Supreme Court Rule 33.1(h), I certify that the petition for a write of certiorari 3,000 words, excluding that parts of the petition that are exempted by Supreme Court Rule 33.1(h)

I declare under penalty of perjury that the foregoing is true and correct.

Excuted on  June 26, 2023

## APPENDIX

1. **THE UNITED STATES COURT OF INTERNATIONAL TRADE
   COURT NO. 20-00316
   <u>JUDGEMENT ENTERED: JUNE 6, 2022</u>**

2. **THE UNITED STATES COURT OF APPEALS FOR FEDERAL
   CIRCUIT
   COURT NO. 22-2017
   <u>JUDGEMENT ENTERED: APRIL 25, 2023</u>**

3. **THE UNITED STATES COURT OF APPEALS FOR FEDERAL
   CIRCUIT
   COURT NO. 22-2017
   <u>JUDGEMENT ON PETITION FOR PANEL REHEARING AND
   REHEARING EN BANC ENTERED: JUNE 12, 2023</u>**

Slip Op. 22-59

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **BYUNGMIN CHAE,** | |
| Plaintiff, | |
| v. | |
| **JANET YELLEN, United States Secretary of the Treasury, ALEJANDRO MAYORKAS, United States Secretary of Homeland Security, UNITED STATES DEPARTMENT OF THE TREASURY, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, and UNITED STATES,** | **Before: Timothy M. Reif, Judge** **Court No. 20-00316** |
| Defendants. | |

### OPINION

[Denying plaintiff's motion for judgment on the agency record.]

Dated: <u>June 6, 2022</u>

<u>Matthew C. Moench</u>, King Moench Hirniak & Mehta, LLP, of Morris Plains, N.J., argued for plaintiff.

<u>Marcella Powell</u>, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, N.Y., argued for defendants. With her on the brief were <u>Brian M. Boynton</u>, Acting Assistant Attorney General, <u>Jeanne E. Davidson</u>, Director, <u>Justin R. Miller</u>, Attorney-in-Charge, International Trade Field Office, and <u>Aimee Lee</u>, Assistant Director. Of counsel on the brief was <u>Mathias Rabinovitch</u>, Office of the Assistant Chief Counsel, International Trade Litigation, U.S. Customs and Border Protection.

* * *

Reif, Judge: Plaintiff, Byungmin Chae, brings this action pursuant to U.S. Court of

International Trade ("USCIT" or the "Court") Rule 56.1 to challenge the decision of U.S.

Customs and Border Protection ("Customs") upholding the denial of plaintiff's appeal of

his result on the Customs Broker License Exam ("CBLE" or "exam").[1] Am. Compl., ECF

No. 20; Br. in Supp. of Pl.'s Mot. for J. on the R. ("Pl. Br."), ECF No. 39; Reply ("Pl.

Reply Br."), ECF No. 43; section 641(e) of the Tariff Act of 1930, as amended, 19

U.S.C. § 1641(e) (2018).[2]  Customs denied plaintiff's appeal based on his failure to

attain a passing score of 75% or higher on the CBLE held on April 25, 2018 ("April 2018

exam"). Def.'s Opp. to Pl.'s Mot. for J. on the R. ("Def. Resp. Br."), ECF No. 40; 19

C.F.R. § 111.11(a)(4).

Plaintiff appeals to the court Customs' decision to deny plaintiff credit for five

questions on the April 2018 exam.[3]  See Pl. Reply Br. at 2. Should plaintiff receive

credit for three of the five contested questions, he would attain a passing score of 75%.

Plaintiff contends also that he is eligible to receive attorney fees and other expenses

---

[1] The court notes with appreciation the participation of Matthew C. Moench as pro bono
counsel in this action.

[2] Further citations to the Tariff Act of 1930, as amended, are also to the relevant
portions of Title 19 of the U.S. Code, 2018 edition.

[3] Plaintiff appealed initially Customs' decision to deny plaintiff credit for seven questions
on the exam. See Pl. Br. at 1; Am. Compl. Following the filing of defendants'
memorandum in opposition to plaintiff's motion, however, plaintiff "concede[d] to the
Government's interpretation and explanation" of two questions on the exam, and
consequently withdrew his challenges to those questions. Pl. Reply Br. at 2.
Accordingly, plaintiff contends that he should receive credit for five questions: questions
5, 27, 33, 39 and 57. Id.

Court No. 20-00316                                                    Page 3

under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d).  *See* Pl. Br. at 13-

14.

         Defendants oppose plaintiff's motion and argue that Customs' decision to deny

plaintiff credit for each contested question was supported by substantial evidence.  *See*

Def. Resp. Br. at 8; Def.'s Answer to First Am. Compl., ECF No. 27.  On this basis,

defendants assert that plaintiff did not attain a passing score of 75% or higher on the

April 2018 exam and, consequently, that Customs' "decision not to grant plaintiff a

license due to his failure to attain a passing score . . . was not arbitrary, capricious, an

abuse of discretion, or otherwise not in accordance with law."  Def. Resp. Br. at 5-6, 22-

23; 5 U.S.C. § 706(2)(A).  Defendants contest also plaintiff's argument that he is entitled

to attorney fees and other expenses under the EAJA.  *See id.* at 21-23.

         For the reasons discussed below, plaintiff's motion is denied.

                                    **BACKGROUND**

         Plaintiff sat for the CBLE on April 25, 2018.  *See* Am. Admin. R., Ex. A, ECF No.

51.  On May 18, 2018, Customs notified plaintiff that he had received a score of 65% —

10% below the passing score of 75%.  *See id.*  Plaintiff appealed this result, and the

Broker Management Branch ("BMB") of Customs notified plaintiff on August 23, 2018,

that, upon further review, his score had improved by two questions, resulting in a score

of 67.5% — still short of the 75% score required to pass.  *See* Am. Admin. R., Exs. B,

C.  Plaintiff then initiated with Customs' Executive Assistant Commissioner ("EAC") a

review of the BMB's decision.  *See* Am. Admin. R., Ex. D.  By letter dated May 23,

2019, the EAC informed plaintiff that his score had improved by three additional

questions, resulting in a 71.25% score — again, short of 75%. *See* Am. Admin. R., Ex.
L.

Plaintiff inquired how to appeal the EAC's decision but was informed that "[t]here
is no 3rd appeal." Am. Admin. R., Ex. M.  Plaintiff learned subsequently, however, that
he had been able to appeal his result to the USCIT and attempted to file a complaint on
March 4, 2020. *See* Pl. Br. at 2.  The Court docketed plaintiff's complaint on September
11, 2020.[4]

In a decision dated May 7, 2021, the court denied defendants' motion to dismiss
plaintiff's complaint, granted plaintiff leave to amend his complaint to bring it into
compliance with the procedural requirements of USCIT Rule 10(a), and sua sponte
invited plaintiff to amend his complaint to bring it into compliance with the substantive
requirements of USCIT Rule 12(b)(6). *Chae I*, 45 CIT at __, 518 F. Supp. 3d at 1389-
90.  On July 6, 2021, plaintiff filed an amended complaint seeking review of Customs'
decision to deny plaintiff's appeal. *See* Am. Compl. at 1-2.

## LEGAL FRAMEWORK

### I.      Application for a customs broker's license

Customs brokers are responsible for the application of statutes and regulations
"governing the movement of merchandise into and out of the customs territory of the
United States." *Dunn-Heiser v. United States*, 29 CIT 552, 553, 374 F. Supp. 2d 1276,

---

[4] "It is unclear what exactly precipitated such a lengthy delay between [plaintiff's] filing
and the Court's docketing; however, the court notes that plaintiff's original filing
coincided with the onset of the COVID-19 pandemic." *Chae v. Sec'y of the Treasury*
(*Chae I*), 45 CIT __, __, 518 F. Supp. 3d 1383, 1390 (2021).

1278 (2005).  Pursuant to 19 U.S.C. § 1641(b)(2), the Secretary of the Treasury is

vested with "broad powers" with respect to the licensing of customs brokers. *DePersia*

*v. United States*, 33 CIT 1103, 1105, 637 F. Supp. 2d 1244, 1247 (2009).  19 U.S.C. §

1641(b)(2) provides:

> The Secretary may grant an individual a customs broker's license only if
> that individual is a citizen of the United States.  Before granting the license,
> the Secretary may require an applicant to show any facts deemed
> necessary to establish that the applicant is of good moral character and
> qualified to render valuable service to others in the conduct of customs
> business.  In assessing the qualifications of an applicant, the Secretary may
> conduct an examination to determine the applicant's knowledge of customs
> and related laws, regulations and procedures, bookkeeping, accounting,
> and all other appropriate matters.

19 U.S.C. § 1641(b)(2).

Customs has promulgated several regulations to implement this statute.  For

instance, 19 C.F.R. § 111.11(a) details the "[b]asic requirements" for an individual to

obtain a customs broker's license:

> (a) INDIVIDUAL.  In order to obtain a broker's license, an individual must:
>
>> (1) Be a citizen of the United States on the date of submission of the
>> application . . . and not an officer or employee of the United States
>> Government;
>>
>> (2) Attain the age of 21 prior to the date of submission of the
>> application . . . ;
>>
>> (3) Be of good moral character; and
>>
>> (4) Have established, by attaining a passing (75 percent or higher)
>> grade on an examination taken within the 3-year period before
>> submission of the application . . . that he has sufficient knowledge of
>> customs and related laws, regulations and procedures, bookkeeping,
>> accounting, and all other appropriate matters to render valuable
>> service to importers and exporters.

19 C.F.R. § 111.11(a)(1)-(4). Further, 19 C.F.R. § 111.12(a) provides information with respect to the submission of an application for a customs broker's license, and 19 C.F.R. § 111.13 regulates the examination that is described in 19 C.F.R. § 111.11(a)(4). *See* 19 C.F.R. §§ 111.12(a), 111.13.

## II. Customs Broker License Exam

Customs' regulations provide that "[t]he examination for an individual broker's license" — referred to as the CBLE — is "designed to determine the individual's knowledge of customs and related laws, regulations and procedures, bookkeeping, accounting, and all other appropriate matters necessary to render valuable service to importers and exporters." *Id.* § 111.13(a); *see* 19 U.S.C. § 1641(b)(2). The fact that this "comprehensive written licensing exam" constitutes one of the requirements to obtain a customs broker's license reflects the "complex[ity]" of the applicable statutes and regulations as well as the "integral role [of customs brokers] in international trade." *Dunn-Heiser*, 29 CIT at 553-54, 374 F. Supp. 2d at 1278.

Customs administers the CBLE twice each year, in April and October. 19 C.F.R. § 111.13(b). The exam consists of 80 multiple choice questions. *See* Am. Admin. R., Ex. N, at *1. In addition, "[t]he exam is open book," and applicants are advised to bring certain specified materials to which they may refer during the exam, including the

Harmonized Tariff Schedule of the United States ("HTSUS") and Title 19 of the Code of

Federal Regulations ("CFR").[5] *Dunn-Heiser*, 29 CIT at 554, 374 F. Supp. 2d at 1278.

As noted, an applicant is required to attain a score of 75% or higher to pass the

CBLE.  19 C.F.R. § 111.11(a)(4); 19 U.S.C. § 1641(b)(2).  However, an applicant who

does not attain a passing score is entitled to retake the exam without penalty.  19 C.F.R.

§ 111.13(e).  In addition, an applicant who does not attain a passing score is entitled to

appeal this result to the BMB.  *Id.* § 111.13(f).  Should the BMB affirm the result, the

applicant is entitled to request that the EAC review the BMB's decision.  *Id.*  Should the

EAC uphold the BMB's decision, the applicant is then entitled to appeal the EAC's

decision to the USCIT.  19 U.S.C. § 1641(e)(1) ("[An] applicant . . . may appeal . . . by

filing in the Court of International Trade, within 60 days after the issuance of the

decision or order, a written petition requesting that the decision or order be modified or

set aside in whole or in part.").

## STANDARD OF REVIEW

This Court has jurisdiction to hear plaintiff's appeal pursuant to 28 U.S.C. §

1581(g)(1) ("The Court of International Trade shall have exclusive jurisdiction of any civil

action commenced to review . . . any decision of the Secretary of the Treasury to deny a

customs broker's license.").

---

[5] *See also Customs Broker License Exam (CBLE)*, U.S. CUSTOMS AND BORDER PROT.,
https://www.cbp.gov/trade/programs-administration/customs-brokers/license-
examination-notice-examination (last visited June 1, 2022) (providing a list of permitted
reference materials).

Court No. 20-00316 Page 8

The U.S. Court of Appeals for the Federal Circuit ("Federal Circuit") has

determined that two elements of review apply with respect to the appeal of an

applicant's result on the CBLE. *See Kenny v. Snow*, 401 F.3d 1359, 1361 (Fed. Cir.

2005). The first element addresses whether Customs' decision to deny an applicant

credit for a contested question was supported by "substantial evidence." *Id.* at 1361-62

(concluding that the "decision to deny credit [for the contested question] [was] supported

by substantial evidence") (citing 19 U.S.C. § 1641(e)(3)). The second element

addresses whether, on the basis of an applicant's failure to attain a passing score on

the CBLE, Customs' decision to deny the applicant a customs broker's license was

"arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."

*Id.* at 1361 (citing 5 U.S.C. § 706).

## I.    "Substantial evidence"

In reviewing Customs' decision to deny an applicant credit for a contested

question on the CBLE, the Court must determine whether the decision was supported

by "substantial evidence." 19 U.S.C. § 1641(e)(3). In *Kenny*, a case involving the

appeal of an applicant's result on the CBLE, the Federal Circuit stated:

> Underpinning a decision to deny a license arising from an applicant's failure
> to pass the licensing examination are factual determinations grounded in
> examination administration issues . . . which are subject to limited judicial
> review because "[t]he findings . . . as to the facts, if supported by substantial
> evidence, shall be conclusive."

*Kenny*, 401 F.3d at 1361 (citing 19 U.S.C. § 1641(e)(3)). "Substantial evidence is 'such

relevant evidence as a reasonable mind might accept as adequate to support a

conclusion.'" *Id.* (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

Further, "the possibility of drawing two inconsistent conclusions from the evidence does

not prevent the agency's finding from being supported by substantial evidence."

*DePersia*, 33 CIT at 1104, 637 F. Supp. 2d at 1247.

With respect to the appeal of questions on the CBLE, the substantial evidence

standard does not require that Customs draft perfect questions. *See Di Iorio v. United*

*States*, 14 CIT 746, 748-49 (1990) ("While not perfect, the question was adequate so

that, as to this question, plaintiff's appeal was rejected reasonably."); *Harak v. United*

*States*, 30 CIT 908, 922-23 (2006) ("[A] question or answer choice need not reflect the

precise wording of the regulation in order to be valid. . . . Though the question is not a

perfect reflection of the regulation's language, it is not inadequate."). For instance, in *Di*

*Iorio*, the court reviewed the plaintiff's appeal of a question concerning copyright

infringement as provided in 19 C.F.R. § 133.43(a):

> (a) NOTICE TO THE IMPORTER. If the district director has any reason to believe
> that an imported article may be an infringing copy or phonorecord of a
> recorded copyrighted work, he shall withhold delivery, notify the importer of
> his action, and advise him that if the facts so warrant he may file a statement
> denying that the article is in fact an infringing copy and alleging that the
> detention of the article will result in a material depreciation of its value, or a
> loss or damage to him. The district director also shall advise the importer
> that in the absence of receipt within 30 days of a denial by the importer that
> the article constitutes an infringing copy or phonorecord, it shall be
> considered to be such a copy and shall be subject to seizure and forfeiture.

19 C.F.R. § 133.43(a) (1989); *see Di Iorio*, 14 CIT at 748. The question that the plaintiff

contested stated:

> Your client, who is just starting to import toy stuffed dinosaurs, has a
> shipment under detention by Customs for possible copyright violation.
> Following your advice, he wrote to the District Director of Customs asserting
> that: (1) the articles are not piratical copies, and (2) because the dinosaurs

are sold seasonally, continued detention will force him out of business. The
District Director will:

A. Release the shipment to the importer unconditionally because they are
seasonal and the District Director has authority to determine if they violate
the copyright.

B. Furnish the copyright owner with a sample and release the shipment if
he does not respond within 30 days.

C. Release the shipment if the importer agrees to post an additional bond.

D. Consider the goods to be restricted and seize the shipment.

*Id.* The plaintiff selected answer choice (D), whereas Customs designated answer

choice (B) as the correct response. *See id.*

In support of his appeal, the plaintiff argued that the contested question was

ambiguous because the question required an applicant to make three assumptions: (1)

the District Director of Customs "actually received" a written statement from the client;

(2) the District Director received such a statement within 30 days; and (3) such a

statement constituted "an acceptable denial" within the meaning of 19 C.F.R. §

133.43(a). *Id.* According to the plaintiff, Customs "erred in rejecting [his] appeal

because requiring the examinee to leap through these assumptions in arriving at the

correct answer placed an unreasonable burden on any test-taker." *Id.*

In rejecting this appeal, the court stated that the question, "[w]hile not perfect" in

view of the absence of the foregoing information, nonetheless provided the applicant

with sufficient information to apply 19 C.F.R. § 133.43(a) and to select the correct

answer choice. *Id.* at 748-49. On this basis, the court concluded that Customs'

decision to deny the plaintiff credit for this question was reasonable. *See id.*

The Court's standard of review with respect to questions on the CBLE is one of

reasonableness. *See Rudloff v. United States*, 19 CIT 1245, 1249 (1995), *aff'd*, 108

F.3d 1392 (Fed. Cir. 1997) ("[T]he question is fair as it reasonably tests 'an applicant's

knowledge of customs and related laws, regulations and procedures.'" (citing 19 U.S.C.

§ 1641(b)(2))); *Di Iorio*, 14 CIT at 747 ("[T]his court notes that, as a general matter, it will

not substitute its own judgment on the merits of the Customs examination, but will

examine decisions made in connection therewith on a reasonableness standard."). The

Court "must necessarily conduct some inquiry into plaintiff's arguments and defendant's

responses concerning each of the . . . challenged test questions." *Di Iorio*, 14 CIT at

747. However, the Court is not "some kind of final reviewer" of the CBLE, *id.* at 752,

and Customs is "entitled to certain latitude in the design and scoring of" the exam.

*Dunn-Heiser*, 29 CIT at 556, 374 F. Supp. 2d at 1280.

In determining whether Customs' position with respect to a contested question is

reasonable and meets the substantial evidence standard, the Court previously has

stated that "susceptibility of different meanings" does not necessarily render a question

or term used therein ambiguous, and that the meaning of the question or term "may be

colored by the context in which it is used." *DePersia*, 33 CIT at 1110-12, 637 F. Supp.

2d at 1251. Further, the fact that a question or term is susceptible of more than one

interpretation will fail to meet the substantial evidence standard only in limited

circumstances. *See, e.g.*, *Harak*, 30 CIT at 928; *O'Quinn v. United States*, 24 CIT 324,

328, 100 F. Supp. 2d 1136, 1140 (2000). These circumstances include that: (1) the

omission of relevant statutory or regulatory language would result in the question falsely

Court No. 20-00316                                                          Page 12

characterizing the applicable provision, *see Harak*, 30 CIT at 928 (citing *Carrier v.*

*United States*, 20 CIT 227, 232 (1996)); (2) the inclusion or omission of language would

result in "the question's incorrect use of" a relevant term, *O'Quinn*, 24 CIT at 328, 100 F.

Supp. 2d at 1140; or (3) the inclusion or omission of language would result in the

question "not contain[ing] sufficient information [for an applicant] to choose an answer."

*Id.*

## II.    "Arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law"

Customs' regulations list four requirements for an individual to obtain a customs

broker's license, one of which is that the applicant "attain[] a passing (75 percent or

higher) grade on" the CBLE.   19 C.F.R. § 111.11(a)(1)-(4).   In reviewing Customs'

decision to deny a customs broker's license, the Court must determine whether such a

decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in

accordance with law."  5 U.S.C. § 706(2)(A); *see Kenny*, 401 F.3d at 1361; *Dunn-*

*Heiser*, 29 CIT at 555, 374 F. Supp. 2d at 1279; *Di Iorio,* 14 CIT at 747.

Should the Court determine that Customs' decision to deny an applicant credit for

contested questions on the CBLE was supported by substantial evidence, and

consequently that an applicant attained less than a 75% score on the exam, then

Customs' denial of a customs broker's license will not have been "arbitrary, capricious,

an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).

### DISCUSSION

The court concludes that Customs' decision to deny plaintiff credit for questions

5, 27, 33 and 39 on the April 2018 exam was supported by substantial evidence, but

Court No. 20-00316                                          Page 13

that Customs' decision with respect to question 57 was not supported by substantial

evidence.  On this basis, plaintiff does not establish that he scored 75% or higher on the

April 2018 exam.  Accordingly, the court concludes that Customs' decision to deny

plaintiff a customs broker's license was not "arbitrary, capricious, an abuse of discretion,

or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  The court concludes

also that plaintiff is not entitled to receive attorney fees and other expenses under the

EAJA.  28 U.S.C. § 2412(d).

## I.     Customs' denial of credit for the contested questions

### A.     Question 5

First, plaintiff appeals Customs' decision to deny plaintiff credit for question 5 on

the April 2018 exam.  *See* Pl. Br. at 4.  Question 5 states:

> Which of the following customs transactions is **NOT** required to be
> performed by a licensed customs broker?
>
> A. Temporary Importation under Bond
>
> B. Transportation in bond
>
> C. Permanent Exhibition Bond
>
> D. Trade Fair Entry
>
> E. Foreign Trade Zone Entry

Am. Admin. R., Ex. N, at *5.

#### 1.     Positions of the parties

Customs designated answer choice (B) as the correct response to question 5.

*See* Def. Resp. Br. at 8.  Plaintiff selected answer choice (E) but does not contest that

answer choice (B) is also correct.  *See* Pl. Br. at 4.  Accordingly, the parties dispute only

whether Customs' decision to deny plaintiff credit for his selection of answer choice (E) was supported by substantial evidence. *See id.* at 5; Def. Resp. Br. at 9-10.

Plaintiff contends that Customs' decision to deny plaintiff credit for his selection of answer choice (E) was not supported by substantial evidence. *See* Pl. Br. at 5. Plaintiff argues that answer choice (E) is correct because "Foreign Trade Zone Entry" is *not* required to be performed by a licensed customs broker. *See id.* at 4. Plaintiff applies a "common understanding" of the term "entry" and contends that the process of "admission" set forth in 19 C.F.R. § 146.32(a)(1) — which does not require a customs broker's license pursuant to 19 C.F.R. § 111.2(a) — constitutes a type of "Foreign Trade Zone Entry." *Id.*

Plaintiff points first to 19 C.F.R. § 146.32(a)(1). *See id.* This regulation provides:

§ 146.32 APPLICATION AND PERMIT FOR ADMISSION OF MERCHANDISE.

> (a)(1) APPLICATION ON CBP FORM 214 AND PERMIT. Merchandise may be admitted into a zone only upon application on a uniquely and sequentially numbered CBP Form 214 ("Application for Foreign Trade Zone Admission and/or Status Designation") and the issuance of a permit by the port director. . . . The applicant for admission shall present the application to the port director and shall include a statistical copy on CBP Form 214-A for transmittal to the Bureau of Census, unless the applicant has made arrangements for the direct transmittal of statistical information to that agency.

19 C.F.R. § 146.32(a)(1). Plaintiff and defendants agree that the process of admission set forth in this provision does not constitute "customs business" that is required to be performed by a licensed customs broker. *See* Pl. Br. at 4; Oral Arg. Tr. at 4:3-9, ECF No. 52; 19 C.F.R. §§ 111.1 (defining "customs business"), 111.2(a)(2)(vi) (providing that an activity such as admission into a foreign trade zone, which does not "involve the

Court No. 20-00316                                                    Page 15

transfer of merchandise to the customs territory of the United States," is not required to

be performed by a licensed customs broker).

Next, plaintiff argues that the process of "admission" set forth in 19 C.F.R. §

146.32(a)(1) falls within a "common understanding" of the term "entry," which plaintiff

asserts to be "the act of entering or the acting of making or entering a record." Pl. Br. at

5. Plaintiff contends that the use of this "common understanding" is appropriate

because answer choice (E) — "Foreign Trade Zone Entry" — is not a term of art that

appears in Customs' regulations.[6] See id. at 4; Oral Arg. Tr. at 20:9-13 (contending that

use of a "common understanding" of a term is appropriate if the term is "not otherwise

defined").

In support of his interpretation of the term "entry," plaintiff refers also to an article

on Customs' website, of which plaintiff requests that the court take judicial notice. See

Pl. Reply Br. at 4-5 n.1; Oral Arg. Tr. at 9:18-10:19. Plaintiff points to the use in this

article of the term "entry" to challenge defendants' "hyper-technical distinction between

'admission' and 'entry.'" See Oral Arg. Tr. at 10:15-17.

---

[6] In addition, plaintiff argues in his memorandum in support of his motion for judgment
on the agency record that the use of a "common understanding" of the term "entry" is
appropriate because the phrase in answer choice (E) is not capitalized. See Pl. Br. at 4.
At oral argument, however, plaintiff notes that the parties learned subsequent to the
submission of their respective briefs that the phrase in answer choice (E) — "Foreign
Trade Zone Entry" — had in fact been capitalized in the April 2018 exam. See Oral Arg.
Tr. at 11:21-14:6. The record has since been corrected to include the full exam. See
Am. Admin. R., Ex. N. Accordingly, plaintiff withdraws his argument with respect to the
capitalization of the term "entry."

On this basis, plaintiff argues that, applying a "common understanding" of the

term "entry," the process of "admission" set forth in 19 C.F.R. § 146.32(a)(1) constitutes

a type of "Foreign Trade Zone Entry" that does not require a customs broker's license

pursuant to 19 C.F.R. § 111.2(a). Pl. Br. at 4-5. Accordingly, plaintiff contends that

answer choice (E) is also correct. *See id.* at 4.

Defendants argue that answer choice (E) is not correct. *See* Def. Resp. Br. at 8-

10. According to defendants, plaintiff applies mistakenly a "common understanding" of

the term "entry," which leads plaintiff to rely incorrectly upon 19 C.F.R. § 146.32(a)(1).

*See id.* Rather, defendants argue that plaintiff should have but did not rely upon 19

C.F.R. § 146.62 in responding to the question. *See id.*

To start, defendants refer to 19 C.F.R. § 146.62, which provides:

§ 146.62 ENTRY.

> (a) GENERAL. Entry for foreign merchandise that is to be transferred
> from a zone, or removed from a zone for exportation or transportation
> to another port, for consumption or warehouse, will be made by filing
> an in-bond application pursuant to part 18 of this chapter, CBP Form
> 3461, CBP Form 7501, or other applicable CBP forms.  If entry is
> made on CBP Form 3461, the person making entry shall file an entry
> summary for all the merchandise covered by the CBP Form 3461
> within 10 business days after the time of entry.

19 C.F.R. § 146.62(a); *see id.* § 146.63-146.64. Defendants note that Customs'

regulations provide that the process of "entry" set forth in 19 C.F.R. § 146.62 constitutes

"customs business" that is required to be performed by a licensed customs broker. *See*

Def. Resp. Br. at 10; 19 C.F.R. §§ 111.1, 111.2(a)(1). According to defendants, plaintiff

should have relied upon 19 C.F.R. § 146.62 in responding to question 5, as the phrase

in answer choice (E) — "Foreign Trade Zone Entry" — "reasonably refers" to the

process of "transferring or removing merchandise from an FTZ" that is described in the

regulation. Def. Resp. Br. at 9-10.

Defendants argue that, rather than relying upon 19 C.F.R. § 146.62, plaintiff

applies mistakenly a "common understanding" of the term "entry." *See id.* Defendants

contend that this "common understanding" leads plaintiff to rely incorrectly upon the

process of "admission" set forth in 19 C.F.R. § 146.32(a)(1). *See id.* at 9.

Defendants point to the substantive differences between the process of

"admission" set forth in 19 C.F.R. § 146.32(a)(1) and the process of "entry" set forth in

19 C.F.R. § 146.62. *See id.* According to defendants, "admission" as set forth in 19

C.F.R. § 146.32(a)(1) concerns the process through which "an importer brings

merchandise into a [foreign trade zone]." *Id.* In contradistinction, defendants note that

"entry" as set forth in 19 C.F.R. § 146.62 concerns the process through which

"merchandise is transferred or removed from a zone for consumption or warehouse."

*Id.* To emphasize further this distinction, defendants note that 19 C.F.R. § 146.32(b)(2),

a subsection of the regulation to which plaintiff points, itself distinguishes "admission"

from "entry." *See* Oral Arg. Tr. at 8:1-8 (citing 19 C.F.R. § 146.32(b)(2) ("The applicant

for *admission* shall submit with the application a document similar to that which would

be required as evidence of the right to make *entry* for merchandise in Customs

territory.") (emphasis supplied)).

On this basis, defendants argue that plaintiff conflates erroneously "admission"

pursuant to 19 C.F.R. § 146.32(a)(1) with "entry" pursuant to 19 C.F.R. § 146.62. *See*

Def. Resp. Br. at 8-9. According to defendants, the proper interpretation and application

of 19 C.F.R. § 146.62 supports the conclusion that "Foreign Trade Zone Entry" *is* required to be performed by a licensed customs broker and, consequently, that answer choice (E) is not correct. *See id.* at 8-10.

Accordingly, defendants argue that Customs' decision to deny plaintiff credit for question 5 was supported by substantial evidence. *Id.* at 10.

### 2.     Analysis

Customs' decision to deny plaintiff credit for question 5 was supported by substantial evidence.

Plaintiff's position with respect to question 5 is not persuasive for three reasons. First, plaintiff applies mistakenly a "common understanding" of the term "entry" in arguing that answer choice (E) is correct. Second, the article on Customs' website to which plaintiff refers does not support his position with respect to question 5. Third, plaintiff conflates erroneously the process of "admission" set forth in 19 C.F.R. § 146.32(a)(1) with the process of "entry" set forth in 19 C.F.R. § 146.62.

First, plaintiff applies mistakenly a "common understanding" of the term "entry." The Court previously has stated that an applicant is required to consult "customs and related laws, regulations and procedures" in responding to questions on the CBLE. *Rudloff*, 19 CIT at 1249 (citing 19 U.S.C. § 1641(b)(2)). Provided that a contested question "reasonably tests" an applicant's knowledge of the foregoing authorities, the Court will accord "a measure of deference" to Customs' determination with respect to the question. *Id.*; *Dunn-Heiser*, 29 CIT at 556, 374 F. Supp. 2d at 1280.

Court No. 20-00316                                                        Page 19

Plaintiff argues that his use of a "common understanding" of the term "entry" is

appropriate because the phrase "Foreign Trade Zone Entry" is not a term of art that

appears as a standalone phrase in Customs' regulations. *See* Pl. Br. at 4-5. This

argument, however, is not consistent with the Court's standard for evaluating questions

on the CBLE. A phrase in a contested question is not required to appear in Customs'

regulations for the phrase to refer "reasonably" to the regulations. *See Harak*, 30 CIT at

922 ("[A] question or answer choice need not reflect the precise wording of the

regulation in order to be valid."); *Di Iorio*, 14 CIT at 748-49 ("While not perfect, the

question was adequate so that, as to this question, plaintiff's appeal was rejected

reasonably.").

　　　With respect to question 5, the phrase in answer choice (E) — "Foreign Trade

Zone Entry" — "reasonably test[ed]" plaintiff's ability to identify the relevance of and to

apply 19 C.F.R. § 146.62. *See Rudloff*, 19 CIT at 1249.  19 C.F.R. § 146.62 concerns

the process of "*[e]ntry* for foreign merchandise that is to be transferred from a *zone*, or

removed from a *zone* for exportation or transportation to another port, for consumption

or warehouse."[7]  19 C.F.R. § 146.62(a) (emphasis supplied).  Further, 19 C.F.R. §

146.62, which is entitled "Entry," is located in Part 146, "Foreign Trade Zones," of Title

19 of the CFR.  Based on the language of 19 C.F.R. § 146.62 and the context within

which the provision is located in Customs' regulations, Customs concluded reasonably

that the phrase in answer choice (E) — "Foreign Trade Zone Entry" — is drafted in a

---

[7] *See* 19 C.F.R. § 146.1(a) (defining terms used in Part 146 of Title 19 of the CFR)
(citing 19 U.S.C. § 81a(i) ("The term 'zone' means a 'foreign-trade zone.'")).

manner that indicates its reference to this provision. Am. Admin. R., Ex. N, at *5. Consequently, Customs determined reasonably that the use of a "common understanding" of the term "entry" is not appropriate in responding to question 5.

Turning to plaintiff's second argument, plaintiff does not establish that the article on Customs' website supports his position with respect to question 5. *See* Pl. Reply. Br. at 4-5 n.1. Plaintiff requests that the court take judicial notice of this article pursuant to Federal Rule of Evidence ("FRE") 201(b)(2), which provides that a "court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2); 28 U.S.C. § 2641(a).

Other federal courts have taken judicial notice of information published by a government agency on a government website on the basis that such a website constitutes a "source[] whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2); *see Lopez v. Bank of Am., N.A.*, 505 F. Supp. 3d 961, 970 (N.D. Cal. 2020) ("The Court will . . . take judicial notice . . . of the document . . . as it is clear on the face of the document — and the Court has independently confirmed — that it comes from a government agency website."); *Dark Storm Indus. LLC v. Cuomo*, 471 F. Supp. 3d 482, 490 n.2 (N.D.N.Y. 2020), *appeal dismissed, cause remanded sub nom. Dark Storm Indus. LLC v. Hochul*, No. 20-2725-CV, 2021 WL 4538640 (2d Cir. Oct. 5, 2021). In such circumstances, courts have "considered separately" the "relevan[ce]" of the information of which judicial notice is taken. *Michael v. New Century Fin. Servs.*, 65 F. Supp. 3d 797, 804 (N.D. Cal. 2014).

The article to which plaintiff points is featured on the "Information Center" section

of Customs' website, and it is "clear on the face of" the article that it was published by

Customs. *Lopez*, 505 F. Supp. 3d at 970.  The "accuracy" of Customs' website "cannot

reasonably be questioned," and consequently the court concludes that this article meets

the standard for judicial notice.  Fed. R. Evid. 201(b)(2).

However, the court concludes that this article does not support plaintiff's

argument with respect to question 5.  The article, which is entitled, "Do I need a

Customs Broker to clear my goods through Customs and Border Protection (CBP)?"

states that "[t]here is no legal requirement for you to hire a Customs Broker to clear your

goods."  Pl. Reply Br. at Ex. A.  In addition, the article cites to a publication by Customs,

entitled "Importing into the United States,"[8] which provides more comprehensive

information to individuals who "choose to file [their] own customs entry."  *Id.*  However,

this publication expressly states that "the information provided [therein] is for general

purposes only" and that "reliance solely on th[is] information . . . may not meet the

'reasonable care' standard required of importers."  Customs Importing Publication at 1-

2; *see* 19 U.S.C. § 1484(a)(1) (requiring the use of "reasonable care" in providing

Customs with "documentation" or "information" with respect to the entry of

merchandise).  Moreover, the CBLE expressly directs applicants to refer to the following

materials: the HTSUS, Title 19 of the CFR, the Instructions for the Preparation of

---

[8] *Importing into the United States*, U.S. CUSTOMS AND BORDER PROT.,
https://www.cbp.gov/sites/default/files/documents/Importing%20into%20the%20U.S.pdf
(last revised 2006) ("Customs Importing Publication").

Page 22

Customs Form 7501, and the Right to Make Entry Directive 3530-002A. *See* Am.
Admin. R., Ex. N, at *1.

The third reason that plaintiff's argument with respect to question 5 is not
persuasive is that plaintiff conflates erroneously the processes set forth in 19 C.F.R. §
146.32(a)(1) and 19 C.F.R. § 146.62. 19 C.F.R. § 146.32(a)(1) concerns the process to
apply and secure a permit for the "admission of merchandise" into a foreign trade zone.
19 C.F.R. § 146.1 defines "admit" as "to bring merchandise into a zone with zone
status." In contradistinction, 19 C.F.R. § 146.62 concerns the process of "[e]ntry for
foreign merchandise that is to be transferred from a zone, or removed from a zone for
exportation or transportation to another port, for consumption or warehouse." Pursuant
to 19 C.F.R. §§ 111.1 and 111.2, this process of entry constitutes "customs business"
that is required to be performed by a licensed customs broker. *See* 19 C.F.R. § 111.1
(providing that activities that "concern[] the entry . . . of merchandise" constitute
"customs business").

In sum, 19 C.F.R. § 146.32(a)(1) involves bringing merchandise *into* a foreign
trade zone, while 19 C.F.R. § 146.62 involves "transferr[ing]" or "remov[ing]"
merchandise *from* a foreign trade zone for "consumption or warehouse." *Compare id.* §
146.32(a)(1) *with id.* § 146.62. The provisions regulate distinct administrative processes
that question 5 reasonably called upon an applicant to distinguish. Plaintiff's counsel
presented the most effective possible arguments in briefing and at oral argument;
however, ultimately, the arguments cannot save the choice plaintiff made during the

exam. Customs' decision to deny plaintiff credit for question 5 was supported by

substantial evidence.

### B.    Question 27

Second, plaintiff appeals Customs' decision to deny plaintiff credit for question 27

on the April 2018 exam. *See* Pl. Br. at 5. Question 27 states:

> Which of the following mail articles are not subject to examination or
> inspection by Customs?
>
> A. Bona-fide gifts with an aggregate fair retail value not exceeding $800 in
> the country of shipment
>
> B. Mail packages addressed to officials of the U.S. Government containing
> merchandise
>
> C. Diplomatic pouches bearing the official seal of France and certified as
> only containing documents
>
> D. Personal and household effects of military and civilian personnel
> returning to the United States upon the completion of extended duty abroad
>
> E. Plant material imported by mail for purposes of immediate exportation by
> mail

Am. Admin. R., Ex. N, at *13.

#### 1.    Positions of the parties

Customs designated answer choice (C) as the correct response to question 27.

*See* Def. Resp. Br. at 10. Plaintiff selected answer choice (B), but does not contest that

answer choice (C) is correct. *See* Pl. Br. at 6. Accordingly, the parties dispute only

whether Customs' decision to deny plaintiff credit for his selection of answer choice (B)

was supported by substantial evidence. *See id.*; Def. Resp. Br. at 11-12.

Plaintiff advances two arguments with respect to question 27. First, plaintiff contends that question 27 is ambiguous because the question does not indicate "where the mail packages are coming from." Pl. Br. at 6. Answer choice (B) points to "[m]ail packages addressed to officials of the U.S. Government containing merchandise." Am. Admin. R., Ex. N, at *13. Plaintiff argues that if the mail packages are sent from a domestic source, then the packages described in this answer choice would not be subject to examination or inspection by Customs. See Pl. Br. at 6. Without this information, however, plaintiff argues that the question is ambiguous. See id.

Second, plaintiff contends that answer choice (B) also is correct. See id.; Pl. Reply Br. at 6. In support of this contention, plaintiff points to two of Customs' regulations. See Pl. Br. at 6. To start, 19 C.F.R. § 145.2(b)(1) provides that "[m]ail known or believed to contain only official documents addressed to officials of the U.S. Government" is not "subject to Customs examination." Plaintiff next turns to 19 C.F.R. § 145.37. See Pl. Reply Br. at 6. This regulation provides that certain "[b]ooks . . . and engravings, etchings, and other articles . . . shall be passed free of duty without issuing an entry when they are addressed to the Library of Congress or any department or agency of the U.S. Government." Id. (quoting 19 C.F.R. § 145.37(b)). Plaintiff contends that the articles described in 19 C.F.R. § 145.37(b) constitute "[m]ail packages addressed to officials of the U.S. Government containing merchandise" that shall be passed free of duty. See id.; Am. Admin. R., Ex. N, at *13. On this basis, plaintiff argues that answer choice (B) is correct. See Pl. Br. at 6; Pl. Reply Br. at 6-7.

Defendants contest both of plaintiff's arguments. *See* Def. Resp. Br. at 10-12. First, defendants challenge plaintiff's contention that the mail articles described in question 27 might be sent from a domestic source. *See id.* at 11-12. According to defendants, question 27 "reasonably assumes that all mail articles identified are imported into the United States" because "[i]f the merchandise was not imported . . . then custom laws would not apply" to the question. *Id.* at 11. Defendants argue that the question and answer choice (B) as drafted reasonably "test the [applicant's] ability to distinguish between imports that require examination or inspection and those that do not." *Id.*

Second, defendants challenge plaintiff's reliance upon 19 C.F.R. § 145.2(b)(1) and 19 C.F.R. § 145.37. *See id.* at 10-11. With respect to 19 C.F.R. § 145.2(b)(1), defendants note that this provision excepts from examination by Customs "[m]ail known or believed to contain *only* official documents addressed to officials of the U.S. Government." *See id.* at 11 (citing 19 C.F.R. § 145.2(b)(1)) (emphasis in original). According to defendants, the plain language of this provision contradicts plaintiff's conclusion that "[m]ail packages addressed to officials of the U.S. Government containing *merchandise*" are not subject to examination or inspection by Customs. Am. Admin. R., Ex. N, at *13 (emphasis supplied); *see* Def. Resp. Br. at 11.

Defendants then turn to 19 C.F.R. § 145.37. *See* Def. Resp. Br. at 11. Defendants raise two points with respect to this regulation. First, defendants note that 19 C.F.R. § 145.37(c) distinguishes mail articles that contain "only official documents" from articles that contain "merchandise." *See id.* According to defendants, this

regulation provides that articles that contain "only official documents[] shall be passed free of duty without issuing an entry." 19 C.F.R. § 145.37(c). In contrast, defendants note that articles that contain "merchandise[] shall be treated in the same manner as other mail articles of merchandise." *Id.* Accordingly, defendants assert that 19 C.F.R. § 145.37(c) indicates that articles that contain "merchandise" shall be subject to examination by Customs. *See* Def. Resp. Br. at 11. On this basis, defendants contend that answer choice (B) is not correct. *See id.* at 10-12.

In the alternative, defendants note that 19 C.F.R. § 145.37 does not concern "Customs' examination" of the subject articles, but rather concerns how the articles "should be treated . . . for duty purposes." Oral Arg. Tr. at 27:12-16. According to defendants, the articles described in 19 C.F.R. §§ 145.37(b) and (c) "still would be subject to Customs' examination" even if those articles are "passed free of duty." *Id.* at 27:13-14; 19 C.F.R. § 145.37(b)-(c). On this basis, defendants contend that 19 C.F.R. § 145.37 is not responsive to question 27 and consequently does not support plaintiff's selection of answer choice (B). *See* Def. Resp. Br. at 11; Oral Arg. Tr. at 27:12-16.

Accordingly, defendants argue that Customs' decision to deny plaintiff credit for question 27 was supported by substantial evidence. *See* Def. Resp. Br. at 12.

### 2.    Analysis

Customs' decision to deny plaintiff credit for question 27 was supported by substantial evidence.

To start, Customs determined reasonably that question 27 presumes that the mail articles described in the question are imported into the United States. This

presumption is reasonable based on the fact that the CBLE is designed to examine an

applicant's ability to interpret and apply "customs and related laws, regulations and

procedures." *Rudloff*, 19 CIT at 1249 (citing 19 U.S.C. § 1641(b)(2)). Without the

presumption that the mail articles described in question 27 are imported into the United

States, the foregoing authorities would not apply to this question. In view of the purpose

of the CBLE, Customs engaged in "reasoned decision-making" in concluding that

question 27 is drafted in a manner that indicates Customs' intention to examine whether

an applicant is able to distinguish imports that are subject to examination or inspection

by Customs from imports that are not subject to such examination or inspection. *Harak*,

30 CIT at 919. For this reason, the court accords Customs a "measure of deference"

with respect to Customs' "design" of question 27 and concludes that the question is not

ambiguous. *Dunn-Heiser*, 29 CIT at 556, 374 F. Supp. 2d at 1280.

Next, Customs determined reasonably that 19 C.F.R. § 145.2(b)(1) and 19

C.F.R. § 145.37 do not support plaintiff's conclusion that answer choice (B) is correct.

19 C.F.R. § 145.2(b)(1) excepts from examination by Customs "[m]ail known or believed

to contain *only official documents* addressed to officials of the U.S. Government." 19

C.F.R. § 145.2(b)(1) (emphasis supplied). This regulation does *not* except from

examination or inspection by Customs the articles described in answer choice (B) —

"[m]ail packages addressed to officials of the U.S. Government containing

*merchandise*." Am. Admin. R., Ex. N, at *13 (emphasis supplied). Further, "official

documents" under 19 C.F.R. § 145.2(b)(1) do not constitute "merchandise" within the

meaning of Customs' regulations. *See, e.g.*, 19 C.F.R. § 145.37(c) (distinguishing mail

articles that contain "official documents" from mail articles that contain "merchandise").

Accordingly, the plain language of 19 C.F.R. § 145.2(b)(1) contradicts plaintiff's

argument with respect to his selection of answer choice (B).

Turning to 19 C.F.R. § 145.37, this provision is not responsive to question 27,

which instructs the applicant to determine "[w]hich of the following mail articles are not

*subject to examination or inspection by Customs*." Am. Admin. R., Ex. N, at *13

(emphasis supplied). 19 C.F.R. § 145.37 does not address whether certain mail articles

are subject to "examination" or "inspection" by Customs. Rather, this provision

addresses whether the articles "shall be passed free of duty without issuing an entry."

19 C.F.R. § 145.37(b)-(c). Whether an article "shall be passed free of duty" is a distinct

question from whether an article "shall be subject to examination or inspection by

Customs." *Id.*; Am. Admin. R., Ex. N, at *13. On this basis, 19 C.F.R. § 145.37 does

not support plaintiff's selection of answer choice (B).

Accordingly, Customs' decision to deny plaintiff credit for question 27 was

supported by substantial evidence.

**C.    Question 33**

Third, plaintiff appeals Customs' decision to deny plaintiff credit for question 33

on the April 2018 exam. *See* Pl. Br. at 7. Question 33 states:

What is the **CLASSIFICATION** of current-production wall art depicting
abstract flowers and birds that is mechanically printed, via lithography, onto
sheets of paper, the paper measuring .35 mm in thickness that have been
permanently mounted onto a backing of .50 mm thick paperboard?

A. 4911.91.2040

B. 4911.91.3000

Court No. 20-00316                                                    Page 29

      C. 4911.99.6000

      D. 9701.10.0000

      E. 9702.00.0000

Am. Admin. R., Ex. N, at *14.

      **1.    Positions of the parties**

      Customs designated answer choice (B) as the correct response to question 33.

*See* Def. Resp. Br. at 12.  Plaintiff selected answer choice (E).  *See* Pl. Br. at 7.

      Plaintiff argues that Customs' decision to deny plaintiff credit for question 33 was

not supported by substantial evidence.  *See id.*  Plaintiff does not contend that his

selection of answer choice (E) is correct; rather, plaintiff argues that question 33 is

ambiguous.  *See id.*

      Question 33 describes the subject merchandise as "current-production wall art . .

. that is mechanically printed, via lithography, onto sheets of paper, the paper

measuring .35 mm in thickness that have been permanently mounted onto a backing of

.50 mm thick paperboard."  Am. Admin. R., Ex. N, at *14.  Customs designated answer

choice (B) as the correct response to question 33.  *See* Pl. Br. at 7.  Answer choice (B)

points to subheading 4911.91.3000 of the HTSUS,[9] which applies to "[l]ithographs on

paper or paperboard" that are "[o]ver 0.51 mm in thickness" and that were "[p]rinted not

over 20 years at the time of importation."  HTSUS, 4911.91.3000; *see* Am. Admin. R.,

Ex. N, at *14.  Further, Additional U.S. Note 1 to Chapter 49 of the HTSUS states that

---

[9] All citations to the HTSUS, including Chapter Notes and General Notes, are to the
2017 Basic Edition.  This edition was in effect on April 25, 2018, when plaintiff sat for
the CBLE.  *See* Am. Admin. R., Ex. N, at *1.

"[f]or the purposes of determining the classification of printed matter produced in whole

or in part by a lithographic process . . . the thickness of a permanently mounted

lithograph is the combined thickness of the lithograph and its mounting." Additional U.S.

Note 1, Chapter 49, HTSUS.

Plaintiff argues that question 33 is ambiguous due to Customs' use of the phrase

"current-production." *See* Pl. Br. at 7. Plaintiff asserts that Customs' designated

answer choice (B) "presupposes a certain timeframe within which the goods are

produced." *Id.* However, plaintiff argues that Customs "does not provide such a time in

the question, instead expecting the undefined phrase 'current production' to signify the

answer." *Id.* Plaintiff contends that the phrase "current-production" does not provide

sufficient information to determine that the subject merchandise was "[p]rinted not over

20 years at time of importation" and consequently is classified properly under

subheading 4911.91.3000. *See id.*; Oral Argument Tr. at 28:20-29:2. Accordingly,

plaintiff argues that question 33 is ambiguous and that Customs' decision to deny

plaintiff credit for the question was not supported by substantial evidence. *See* Pl. Br. at

7.

Defendants contend that Customs' decision to deny plaintiff credit for question 33

was supported by substantial evidence. To start, defendants contest plaintiff's

argument that Customs' use of the phrase "current-production" renders question 33

ambiguous. *See* Def. Resp. Br. at 12-14. Defendants contend that Customs

determined that "the term 'current-production' . . . reasonably means that the printed

lithography is not over 20 years old." *Id.* at 13. According to defendants, this phrase,

while "not a number of years . . . gives the test-taker a time reference" that provides

sufficient information to determine that the subject merchandise is classified properly

under subheading 4911.91.3000. Oral Arg. Tr. at 30:3-11; *see* Def. Resp. Br. at 13-14.

On this basis, defendants contend that answer choice (B) is correct. *See* Def. Resp. Br.

at 13-14.

In addition, defendants argue that plaintiff's selected answer choice (E) is not

correct. *See id.* at 14. Answer choice (E) points to Heading 9702.00.000 of the

HTSUS, which applies to "[o]riginal engravings, prints and lithographs, framed or not

framed." HTSUS, 9702.00.000; *see* Am. Admin. R., Ex. N, at *14. Note 2 to Chapter 97

of the HTSUS states that "[f]or purposes of heading 9702, the expression '<u>original</u>

<u>engravings, prints and lithographs</u>' means impressions produced directly . . . of one or

of several plates wholly executed by hand by the artist . . . *not including any mechanical*

*or photomechanical process*.'" Note 2, Chapter 97, HTSUS (emphasis supplied).

Notably, question 33 describes the subject merchandise as "mechanically printed." Am.

Admin. R., Ex. N, at *14. Accordingly, defendants argue that in view of Note 2, Heading

9702.00.000 does not apply to the subject merchandise. *See* Def. Resp. Br. at 14. On

this basis, defendants contend that answer choice (E) is not correct. *See id.*

Accordingly, defendants argue that Customs' decision to deny plaintiff credit for

question 33 was supported by substantial evidence. *See id.* at 13-14.

### 2.    Analysis

Customs' decision to deny plaintiff credit for question 33 was supported by

substantial evidence.

Court No. 20-00316                                                          Page 32

Question 33 evaluates the ability of an applicant to interpret and apply the

HTSUS. In determining the proper tariff classification of subject merchandise, the Court

is required to apply in numerical order the General Rules of Interpretation ("GRIs") of

the HTSUS. *See BASF Corp. v. United States*, 482 F.3d 1324, 1325-26 (Fed. Cir.

2007). GRI 1 states that the classification of merchandise "shall be determined

according to the terms of the headings and any relative section or chapter notes." GRI

1, HTSUS. In addition, the Section and Chapter Notes featured in the HTSUS are not

"optional interpretive rules," but rather have the force of statutory law. *Avenues in*

*Leather, Inc. v. United States*, 423 F.3d 1326, 1333 (Fed. Cir. 2005) (quoting *Park B.*

*Smith, Ltd. v. United States*, 374 F.3d 922, 927 (Fed. Cir. 2003)).

With respect to question 33, Customs determined reasonably that answer choice

(B) — subheading 4911.91.3000 of the HTSUS — is correct. The merchandise

described in question 33 is a permanently mounted lithograph, printed onto sheets of

paper and paperboard with a combined thickness of 0.85 mm. *See* Am. Admin. R., Ex.

N, at *14. Subheading 4911.91.3000 of the HTSUS applies to "*[l]ithographs on paper or*

*paperboard*" that are "[o]*ver 0.51 mm in thickness*," HTSUS, 4911.91.3000 (emphasis

supplied), and Additional U.S. Note 1 to Chapter 49 of the HTSUS states that "[f]or the

purposes of determining the classification of *printed matter produced in whole or in part*

*by a lithographic process* . . . the thickness of a permanently mounted lithograph is the

combined thickness of the lithograph and its mounting." Additional U.S. Note 1, Chapter

49, HTSUS (emphasis supplied). Accordingly, the merchandise described in question

33 tracks closely to subheading 4911.91.3000 in answer choice (B).

Court No. 20-00316                                                          Page 33

In addition, Customs determined reasonably that plaintiff's selected answer
choice (E) is *not* correct. As noted, answer choice (E) refers to Heading 9702.00.000 of
the HTSUS, which, pursuant to Note 2 to Chapter 97, expressly does *not* cover
merchandise that is produced by "any mechanical or photomechanical process." Note
2, Chapter 97, HTSUS; Am. Admin. R., Ex. N, at *14. Accordingly, answer choice (E)
by its terms directly contradicts the language of question 33, which explicitly describes
the subject merchandise as "mechanically printed." Am. Admin. R., Ex. N, at *14.

Plaintiff argues that the phrase "current-production" in question 33 is not
sufficiently precise to indicate that the merchandise was "[p]rinted not over 20 years"
ago, per subheading 4911.91.3000 in answer choice (B). *See* Pl. Reply Br. at 7;
HTSUS, 4911.91.3000. However, the Court previously has stated that "a question or
answer choice need not reflect the precise wording of [a statute or regulation] in order to
be valid" and supported by substantial evidence. *Harak*, 30 CIT at 922; *see* 19 U.S.C. §
1202. Moreover, Heading 9702.00.000, in answer choice (E), does not classify subject
merchandise with reference to *any* timeframe for production, thereby providing a further
indication — particularly, in comparison with answer choice (B) — that answer choice
(E) was not *a* or *the* correct choice. Am. Admin. R., Ex. N, at *14; HTSUS,
9702.00.000; *see Di Iorio*, 14 CIT at 748. Accordingly, the express terms of answer
choice (B) track closely to question 33, while the express terms of answer choice (E)
directly contradict question 33. "While not perfect, the question was adequate so that,
as to this question, plaintiff's appeal was rejected reasonably." *Di Iorio*, 14 CIT at 748-
49.

Consequently, and despite the compelling advocacy of plaintiff's counsel in

briefing and at oral argument — on this point and, in fact, as to each of the five

questions in dispute — the court concludes that Customs' decision to deny plaintiff

credit for question 33 was supported by substantial evidence.

### D.    Question 39

Fourth, plaintiff appeals Customs' decision to deny plaintiff credit for question 39

on the April 2018 exam. *See* Pl. Br. at 8.  Question 39 states:

> What is the **CLASSIFICATION** of a teacup that is made of porcelain
> containing 28 percent of tricalcium phosphate, valued at $18, and offered
> for sale in the same pattern as all of the other articles listed in Additional
> U.S. Note 6(b) to Chapter 69, HTSUS, with the aggregate value of all those
> articles listed in that note being $900?
>
> A. 6911.10.2500
>
> B. 6911.10.3810
>
> C. 6911.10.5800
>
> D. 6911.10.8010
>
> E. 6912.00.4500

Am. Admin. R., Ex. N, at *16.

### 1.    Positions of the parties

Customs designated answer choice (A) as the correct response to question 39.

*See* Def. Resp. Br. at 14.  Plaintiff selected answer choice (B). *See* Pl. Br. at 8.

Plaintiff argues that Customs' decision to deny plaintiff credit for question 39 was

not supported by substantial evidence. *See id.* at 9.  Plaintiff does not contend that his

selection of answer choice (B) is correct; rather, plaintiff argues that question 39 is ambiguous. *See id.* at 8.

Question 39 describes the subject merchandise as "a teacup that is made of porcelain containing 28 percent of tricalcium phosphate, valued at $18 and offered for sale in the same pattern as all of the other articles listed in Additional U.S. Note 6(b) to Chapter 69, HTSUS." Am. Admin. R., Ex. N, at *16. Customs designated answer choice (A) as the correct response to the question. Pl. Br. at 8. Answer choice (A) points to subheading 6911.10.2500 of the HTSUS, which applies to "[t]ableware and kitchenware" that is made of "bone chinaware" and that is valued at "[o]ther" than "not over $31.50 per dozen pieces" — *i.e.*, valued at over $31.50 per dozen pieces. HTSUS, 6911.10.2500. Further, Additional U.S. Note 5(b) to Chapter 69 of the HTSUS states that "the term 'bone chinaware' embraces chinaware or porcelain the body of which contains 25 percent or more of calcined bone or tricalcium phosphate." Additional U.S. Note 5(b), Chapter 69, HTSUS.

Plaintiff asserts that the reference in question 39 to "a" single teacup is inconsistent with the reference in subheading 6911.10.2500 to a "dozen pieces." Pl. Br. at 8. In view of this inconsistency, plaintiff contends that question 39 is ambiguous, as the question "confuses the price of a single teacup versus the price of a dozen cups." *Id.* Plaintiff argues that he "should not be required to guess as to the number or value" of the merchandise to which the question refers. *Id.* Further, plaintiff contends that the value of the described merchandise, $18, indicates that subheading 6911.10.1500 — which applies to merchandise "valued *not over* $31.50 per dozen pieces" — is the "best

fit as the correct answer to the question." *Id.*; HTSUS, 6911.10.1500 (emphasis supplied). Given that subheading 6911.10.1500 is not listed as one of the answer choices to question 39, plaintiff contends that Customs' decision to deny plaintiff credit for this question was not supported by substantial evidence. *See* Pl. Br. at 8-9.

Defendants contest plaintiff's argument that question 39 is ambiguous and emphasize that the question refers "clearly" to the price of "a" single teacup. Def. Resp. Br. at 14-15. Defendants assert that Customs "did not confuse the price of a teacup versus a dozen teacups." *Id.* at 15. Rather, according to defendants, question 39 "reasonably required the test taker to calculate the price of a dozen teacups based on the fact that one teacup costs \$18." *Id.* This calculation, in turn, would lead the applicant to conclude that the subject merchandise is classified properly under subheading 6911.10.2500. *See id.* Accordingly, defendants contend that question 39 is not ambiguous and that answer choice (A) is correct. *See id.*

On this basis, defendants argue that Customs' decision to deny plaintiff credit for question 39 was supported by substantial evidence. *See id.* at 14-15.

### 2. Analysis

Customs' decision to deny plaintiff credit for question 39 was supported by substantial evidence.

Customs determined reasonably that answer choice (A) is correct. The merchandise described in question 39 — "a teacup that is made of porcelain containing 28 percent of tricalcium phosphate, valued at \$18 and offered for sale in the same

pattern as all of the other articles listed in Additional U.S. Note 6(b)" — is classified properly under subheading 6911.10.2500 of the HTSUS. Am. Admin. R., Ex. N, at *16.

First, the merchandise, a teacup, constitutes "[t]ableware [or] kitchenware." HTSUS, 6911.10.2500.

Second, the merchandise is made of "bone chinaware" because it contains "28 percent of tricalcium phosphate." Am. Admin. R., Ex. N, at *16. As Additional U.S. Note 5(b) states, "bone chinaware" encompasses "chinaware . . . the body of which contains *25 percent or more* of . . . tricalcium phosphate." Additional Note 5(b), Chapter 69, HTSUS (emphasis supplied).

Last, the merchandise is valued at over $31.50 per dozen pieces. HTSUS, 6911.10.2500. Question 39 indicates that "a" teacup is valued at $18. Am. Admin. R., Ex. N, at *16. Accordingly, by multiplying the value of a single teacup by 12, the value of the merchandise "per dozen pieces" is $216 — *i.e.*, greater than $31.50 per dozen pieces. Customs determined reasonably that question 39 "test[s] an understanding of the structure of the HTSUS" by requiring an applicant to make the foregoing simple mathematical calculation to determine the proper classification of the subject merchandise. *Harak*, 30 CIT at 915; *see* Additional U.S. Note 7, Chapter 69, HTSUS ("For the purposes of headings 6911 . . . an article is a single tariff entity which may consist of more than one piece."). Plaintiff's failure to make this calculation does not indicate that question 39 is ambiguous. This calculation indicates that the merchandise is classified properly under subheading 6911.10.2500, rather than subheading 6911.10.1500, as plaintiff argues, and consequently that answer choice (A) is correct.

In addition, Customs determined reasonably that plaintiff's selection of answer choice (B) is not correct. Answer choice (B) provides that the proper classification of the subject merchandise is subheading 6911.10.3810 of the HTSUS, which applies to "[o]ther . . . teacups and saucers . . . not over 22.9 cm in maximum" that have an "[a]ggregate value over $200." HTSUS, 6911.10.3810. The use of the term "[o]ther" indicates that merchandise classified under this subheading 6911.10.3810 is made of "[o]ther" than bone chinaware. *Id.* However, pursuant to Additional U.S. Note 5(b), the merchandise described in question 39 is made of "bone chinaware." Additional Note 5(b), Chapter 69, HTSUS. On this basis, Customs determined reasonably that this merchandise is not classified properly under subheading 6911.10.3810 and that answer choice (B) is not correct.

Accordingly, Customs' decision to deny plaintiff credit for question 39 was supported by substantial evidence.

## E.    Question 57

Last, plaintiff appeals Customs' decision to deny plaintiff credit for question 57 on the April 2018 exam. *See* Pl. Br. at 11. Question 57 states:

> Which of the following shipments does not contain restricted gray market merchandise as defined in 19 C.F.R. § 133.23?
>
> A. A shipment of jeans, bearing a trademark registered and recorded in the United States, applied by a U.S. trademark owner's foreign licensee independent of the U.S. trademark owner.
>
> B. A shipment of shoes, bearing a trademark registered and recorded in the United States, applied under the authority of a foreign trademark owner other than the U.S. owner, a parent or subsidiary of the U.S. owner, or a party under common ownership or control with the U.S. owner, to whom the U.S. owner sold the foreign title.

C. A shipment of jackets, bearing a trademark registered and recorded in the United States, applied under the authority of a foreign trademark owner other than the U.S. owner, a parent or subsidiary of the U.S. owner, or a party under common ownership or control with the U.S. owner, from whom the U.S. owner acquired the domestic title.

D. A shipment of books, bearing a U.S. registered and recorded trademark applied by a foreign subsidiary of the U.S. owner, determined by CBP to be different from the books authorized by the U.S. owner for importation or sale in the United States. The books feature a conspicuous label that they are not authorized by the U.S. owner for importation into the U.S. and are physically and materially different from the authorized ones.

E. A shipment of shirts, bearing a genuine foreign trademark owned by a foreign trademark owner, identical with or substantially indistinguishable from a trademark registered and recorded in the United States. The shipment was imported without the authorization of the U.S. owner who is not related to the foreign owner.

Am. Admin. R., Ex. N, at *25.

### 1.     Positions of the parties

Customs designated answer choice (E) as the correct response to question 57.

*See* Def. Resp. Br. at 20.  Plaintiff selected answer choice (D).  *See* Pl. Br. at 12.

Plaintiff argues that Customs' decision to deny plaintiff credit for question 57 was not supported by substantial evidence.  *See id.* at 13.  Plaintiff contends first that his selection of answer choice (D) is correct because the shipment described in this answer choice does *not* contain restricted gray market merchandise as defined in 19 C.F.R. § 133.23.  *See id.* at 12.  19 C.F.R. § 133.23(a) provides:

§ 133.23 RESTRICTIONS ON IMPORTATION OF GRAY MARKET ARTICLES.

(a) RESTRICTED GRAY MARKET ARTICLES DEFINED.  "Restricted gray market articles" are foreign-made articles bearing a genuine trademark or trade name identical with or substantially indistinguishable from one owned and recorded by a citizen of the United States or a corporation or association created or organized

within the United States and imported without the authorization of the U.S. owner. "Restricted gray market goods" include goods bearing a genuine trademark or trade name which is:

> (1) INDEPENDENT LICENSEE. Applied by a licensee (including a manufacturer) independent of the U.S. owner; or

> (2) FOREIGN OWNER. Applied under the authority of a foreign trademark or trade name owner other than the U.S. owner, a parent or subsidiary of the U.S. owner, or a party otherwise subject to common ownership or control with the U.S. owner . . . from whom the U.S. owner acquired the domestic title, or to whom the U.S. owner sold the foreign title(s); or

> (3) "LEVER-RULE". Applied by the U.S. owner, a parent or subsidiary of the U.S. owner, or a party otherwise subject to common ownership or control with the U.S. owner . . . to goods that [Customs] has determined to be physically and materially different from the articles authorized by the U.S. trademark owner for importation or sale in the U.S.

19 C.F.R. § 133.23(a)(1)-(3).

Plaintiff argues that the shipment described in answer choice (D) does not contain restricted gray market merchandise for three reasons: (1) the labels are "attached in close proximity to the trademark;" (2) the labels "appear[] in [their] most prominent location on the books;" and (3) the described books are "different from the books authorized by the U.S. owner for importation or sale in the United States." Pl. Br. at 12. According to plaintiff, merchandise that bears the foregoing characteristics does not constitute restricted gray market merchandise within the meaning of 19 C.F.R. § 133.23. *See id.* On this basis, plaintiff contends that answer choice (D) is correct. *See id.*

Next, plaintiff contends that Customs' selection of answer choice (E) is not correct because the shipment described in this answer choice *contains* restricted gray

market merchandise. *See id.* Answer choice (E) describes a "shipment of shirts,

bearing a genuine foreign trademark owned by a foreign trademark owner, identical with

or substantially indistinguishable from a trademark registered and recorded in the

United States[,] . . . [which] was imported without the authorization of the U.S. owner

who is not related to the foreign owner." Am. Admin. R., Ex. N, at *25. Based on this

description, plaintiff argues that this merchandise falls within the "exact definition" of

restricted gray market merchandise as set forth in 19 C.F.R. § 133.23(a). Pl. Reply Br.

at 9.

     In response, defendants challenge first plaintiff's argument with respect to

answer choice (D). Defendants argue that the three characteristics of the merchandise

as described by plaintiff "have no bearing on the definition of 'gray market' goods as set

forth in 19 C.F.R. § 133.23(a)." Def. Resp. Br. at 20 (citing Pl. Br. at 12). Further,

defendants argue that the merchandise described in answer choice (D) meets the

definition of restricted gray market merchandise provided in 19 C.F.R. § 133.23(a). *See*

*id.*

     Turning to answer choice (E), defendants contend that this answer choice is

correct because the described merchandise bears "a genuine *foreign* trademark." Am.

Admin. R., Ex. N, at *25 (emphasis supplied). According to defendants, 19 C.F.R. §

133.23(a) provides that restricted gray market merchandise comprises only

merchandise that bears a "genuine trademark." Def. Resp. Br. at 20. Defendants argue

that "regulations of foreign trademarks and their owners are not found in 19 C.F.R. §

133.23 because such facts have no bearing on the definition of a gray market good." *Id.*

Consequently, defendants assert that Customs determined reasonably that the

shipment described in answer choice (E) does not fall within "the definition of a gray

market good" and that this answer choice is correct. *Id.* at 20-21.

Accordingly, defendants argue that Customs' decision to deny plaintiff credit for

question 57 was supported by substantial evidence. *See id.* at 21.

> **2.    Analysis**

The court concludes that Customs' decision to deny plaintiff credit for question 57

was not supported by substantial evidence.[10]

The court addresses first the parties' arguments with respect to answer choice

(D).  As noted, plaintiff argues that the shipment described in answer choice (D) does

*not* contain restricted gray market merchandise based on three characteristics, Pl. Br. at

12, while defendants contend that the three characteristics that plaintiff identifies "have

no bearing on the definition of 'gray market' goods as set forth in 19 C.F.R. §

133.23(a)." Def. Resp. Br. at 20.

---

[10] Based on the foregoing analysis of questions 5, 27, 33 and 39, plaintiff has not met the "minimum threshold" to establish entitlement to credit for at least three questions to attain a passing score on the CBLE. *Harak*, 30 CIT at 929.  Nonetheless, the court offers a brief statement of its analysis and conclusions with respect to question 57.  This approach highlights that the fullest possible consideration has been given to Mr. Chae's claims and appeals in this matter.  This approach is also consistent with past decisions of the Court.  *See id.* (concluding that a contested question "technically ha[d] two answers," despite determining that the receipt of credit for the question would not enable the plaintiff to attain a passing score on the exam).

The books described in answer choice (D) satisfy the requirements set forth in 19

C.F.R. § 133.23(b) and accordingly do not constitute restricted gray market

merchandise.  19 C.F.R. § 133.23(b) provides:

> (b) LABELING OF PHYSICALLY AND MATERIALLY DIFFERENT GOODS.   Goods
> determined by [Customs] to be physically and materially different under the
> procedures of this part, bearing a genuine mark applied under the authority
> of the U.S. owner, a parent or subsidiary of the U.S. owner, or a party
> otherwise subject to common ownership or control with the U.S. owner . . .
> shall not be detained under the provisions of paragraph (c) of this section
> where the merchandise or its packaging bears a conspicuous and legible
> label designed to remain on the product until the first point of sale to a retail
> consumer in the United States stating that: "This product is not a product
> authorized by the United States trademark owner for importation and is
> physically and materially different from the authorized product."  The label
> must be in close proximity to the trademark as it appears in its most
> prominent location on the article itself or the retail package or container.
> Other information designed to dispel consumer confusion may also be
> added.

19 C.F.R. § 133.23(b).

Pursuant to 19 C.F.R. § 133.23(c), merchandise that bears the characteristics set

forth in 19 C.F.R. § 133.23(b) shall not be subject to restrictions such as "deni[al] [of]

entry" and "detention."  19 C.F.R. § 133.23(c); see XYZ Corp. v. United States, 41 CIT

__, __, 253 F. Supp. 3d 1257, 1269 (2017) ("'Importation of the . . . subject gray market

[merchandise] is restricted, unless the labeling requirements of 19 CFR § 133.23(b)

have been satisfied.'" (quoting U.S. Customs and Border Protection Grant of "Lever–

Rule" Protection, 51 Cust. Bull. & Dec. No. 12 at 1 (Mar. 22, 2017))).

The merchandise described in answer choice (D) bears each of the

characteristics set forth in 19 C.F.R. § 133.23(b).  First, the books described in answer

choice (D) are "physically and materially different" from books that are authorized by the

C.F.R. § 133.23(b), and, pursuant to 19 C.F.R. § 133.23(c), the merchandise is not subject to restrictions such as denial of entry or detention. *See* 19 C.F.R. §§ 133.23(c), 133.25.

Plaintiff identified correctly that the merchandise described in answer choice (D) does not constitute "restricted gray market merchandise" within the meaning of 19 C.F.R. § 133.23. Pl. Br. at 12; 19 C.F.R. § 133.23. Customs' decision to deny plaintiff credit for his selection of this answer choice was not reasonable, as Customs did not address the applicability of 19 C.F.R. §§ 133.23(b) and (c) to question 57 in evaluating plaintiff's selection.

Turning to answer choice (E), the court concludes that Customs determined reasonably that this answer choice is a correct response to question 57. 19 C.F.R. § 133.23(a) defines restricted gray market merchandise as "foreign-made articles bearing a *genuine trademark* or trade name." 19 C.F.R. § 133.23(a) (emphasis supplied). Answer choice (E) describes a "shipment of shirts, bearing a *genuine foreign trademark.*" Am. Admin. R., Ex. N, at *25 (emphasis supplied).

The inclusion of the term "foreign" in the phrase "genuine foreign trademark" in answer choice (E) distinguishes the merchandise described in this answer choice from merchandise that constitutes "restricted gray market merchandise" pursuant to 19 C.F.R. § 133.23(a). *Id.* Further, 19 C.F.R. § 133.23(a) is located in Part 133 of Title 19 of the CFR, which concerns the "the recordation of trademarks, trade names, and copyrights with *the U.S. Customs and Border Protection.*" 19 C.F.R. § 133.0 (emphasis supplied). The language of 19 C.F.R. § 133.23(a) and the context within which the

provision is located in Customs' regulations demonstrate that "restricted gray market
merchandise" does not encompass merchandise that bears a foreign trademark. On
this basis, Customs determined reasonably that answer choice (E) does not contain
restricted gray market merchandise and consequently that this answer choice is correct.

Plaintiff's counsel argued cogently in support of the position that Customs
unreasonably denied plaintiff credit for his selection of answer choice (D). For the
foregoing reasons, the court concludes that both answer choices (D) and (E) are correct
and that Customs' decision to deny plaintiff credit for question 57 was not supported by
substantial evidence.

## II.     Customs' decision to deny plaintiff a customs broker's license

### A.     Positions of the parties

As discussed *supra* Sections I.A-E, plaintiff contends that he is entitled to credit
for the contested questions such that he "achieved the requisite minimum passing score
of 75%" on the April 2018 exam. Pl. Br. at 1. On this basis, plaintiff asserts that
Customs' decision to deny plaintiff a customs broker's license was "arbitrary, capricious,
an abuse of discretion, or otherwise not in accordance with law." *Id.* at 3; Am. Compl. at
1-2, 14; *Kenny*, 401 F.3d at 1361 n.3 ("[T]he denial of a license is a foregone conclusion
for an unsuccessful examinee."). Defendants' view is that Customs' "decision not to
grant plaintiff a license due to his failure to attain a passing score on the [CBLE] was not
arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."
Def. Resp. Br. at 22-23.

Court No. 20-00316                                                    Page 47

## B.    Analysis

In reviewing Customs' decision to deny a customs broker's license, the Court is

required to determine whether such a decision was "arbitrary, capricious, an abuse of

discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *see Kenny*,

401 F. 3d at 1361; *Dunn-Heiser*, 29 CIT at 555, 374 F. Supp. 2d at 1279; *Di Iorio*, 14

CIT at 747. A lawful ground for such a decision is an applicant's failure to pass the

CBLE. *See* 19 U.S.C. § 1641(b)(2); 19 C.F.R. § 111.16(b)(2).

As discussed, a passing score on the CBLE is 75% or higher. 19 C.F.R. §

111.11(a)(4). In addition, each question on the 80 question exam is worth 1.25% of the

total score. *See* Am. Admin. Rec, Ex. N, at *1. The Court previously has stated that to

appeal successfully a result on the CBLE, an applicant is required to establish

entitlement to credit for the "minimum" number of questions that the applicant requires

to achieve a passing score. *Harak*, 30 CIT at 929. Should the applicant fail to meet this

"minimum threshold," then Customs' denial of a customs broker's license is not

"arbitrary, capricious, or otherwise not in accordance with law." *Id.* (citing 5 U.S.C. §

706(2)(A)).

Plaintiff's score on the April 2018 exam is 71.25%. *See* Am. Admin. R., Ex. L, at

*1. Consequently, to attain a passing score of 75% or higher, plaintiff is required to

establish that he is entitled to receive credit for at least three of the five contested

questions. Based on the foregoing analysis, the court concludes that Customs' decision

to deny plaintiff credit for four of the five contested questions was supported by

substantial evidence. Accordingly, plaintiff does not meet the "minimum threshold" to

establish entitlement to credit for at least three questions. *Harak*, 30 CIT at 929. For

this reason, Customs' decision to deny plaintiff's appeal was not "arbitrary, capricious,

an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A);

*see* 19 C.F.R. § 111.16(b)(2).

## III.    EAJA attorney fees and other expenses

### A.    Positions of the parties

The EAJA provides that "a court shall award to a prevailing party other than the

United States fees and other expenses . . . unless the court finds that the position of the

United States was substantially justified or that special circumstances make an award

unjust." 28 U.S.C. § 2412(d)(1)(A). Plaintiff contends that, provided that he prevails in

the instant appeal, he also is entitled to attorney fees and other expenses under the

EAJA. 28 U.S.C. § 2412(d)(1)(A); Pl. Br. at 13-14. Plaintiff argues that defendants'

position in this appeal was not "substantially justified" because the contested questions

— as well as Customs' decision to deny plaintiff credit for those questions — were

"vague, ambiguous, and unfairly confusing." *Id.* at 14. Defendants argue for several

reasons that the court should deny plaintiff's request for attorney fees and other

expenses under the EAJA. *See* Def. Resp. Br. at 22-23 (citing 28 U.S.C. §

2412(d)(1)(A)).

### B.    Analysis

The EAJA provides that "a court shall award to a *prevailing party* other than the

United States fees and other expenses . . . unless the court finds that the position of the

Court No. 20-00316                                                    Page 49

United States was substantially justified or that special circumstances make an award

unjust."[11]  28 U.S.C. § 2412(d)(1)(A) (emphasis supplied).

Based on the foregoing analysis, plaintiff is not a "prevailing party" within the

meaning of the EAJA. *Id.*; *see Former Emps. of IBM Corp., Glob. Servs. Div. v. U.S.

Sec'y of Lab.*, 30 CIT 1591, 1593, 462 F. Supp. 2d 1239, 1241-42 (2006), *aff'd sub*

*nom. Former Emps. of IBM Corp. v. Chao*, 292 F. App'x 902 (Fed. Cir. 2008)

("According to the Supreme Court, a 'prevailing party' for the purposes of fee-shifting

statutes, such as the EAJA, must have obtained sought-after relief through . . . a

'judgment[] on the merits' of its case.") (citing *Buckhannon Bd. & Care Home, Inc. v. W.*

*Va. Dep't of Health & H.R.*, 532 U.S. 598, 604 (2001)).  Whether plaintiff is a "prevailing

party" is a threshold consideration with respect to relief under the EAJA, and

consequently the court is not required to determine whether defendants' position was

"substantially justified" or whether "special circumstances make an award unjust."  28

U.S.C. § 2412(d)(1)(A).  Accordingly, the court denies plaintiff's request for attorney

fees and other expenses under the EAJA. *See DePersia,* 33 CIT at 1112, 637 F. Supp.

2d at 1252-53 (concluding that the plaintiff's "request for relief under the EAJA cannot

lie" because the denial of the plaintiff's appeal was "not arbitrary, capricious, an abuse

of discretion, or otherwise not in accordance with law").

---

[11] In addition, to be eligible for relief under the EAJA, the party requesting relief must not
have had a net worth that exceeds $2,000,000 at the time the civil action was filed. *See*
28 U.S.C. § 2412(d)(2)(B).  The parties do not contest that plaintiff did not have a net
worth exceeding $2,000,000 at the time he filed the instant appeal.

Court No. 20-00316
Page 50

## CONCLUSION

For the foregoing reasons, the court concludes that Customs' decision to deny

plaintiff credit for questions 5, 27, 33 and 39 on the April 2018 exam was supported by

substantial evidence, and consequently that Customs' decision to deny plaintiff a

customs broker's license was not "arbitrary, capricious, an abuse of discretion, or

otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). In addition, the court

concludes that plaintiff is not entitled to attorney fees and other expenses under the

EAJA.

Accordingly, it is hereby

**ORDERED** that plaintiff's motion for judgment on the agency record pursuant to

USCIT Rule 56.1 is denied; and it is further

**ORDERED** that judgment is entered for defendants and the action is dismissed.

/s/     Timothy M. Reif
Timothy M. Reif, Judge

Dated: June 6, 2022
New York, New York

NOTE: This disposition is nonprecedential.

# United States Court of Appeals
# for the Federal Circuit

---

**BYUNGMIN CHAE,**
*Plaintiff-Appellant*

v.

**JANET YELLEN, SECRETARY OF THE
TREASURY, ALEJANDRO MAYORKAS,
SECRETARY OF HOMELAND SECURITY,
DEPARTMENT OF THE TREASURY,
DEPARTMENT OF HOMELAND SECURITY,
UNITED STATES,**
*Defendants-Appellees*

---

2022-2017

---

Appeal from the United States Court of International Trade in No. 1:20-cv-00316-TMR, Judge Timothy M. Reif.

---

Decided: April 25, 2023

---

BYUNGMIN CHAE, Elkhorn, NE, pro se.

MARCELLA POWELL, Commercial Litigation Branch, Civil Division, United States Department of Justice, New York, NY, for defendants-appellees. Also represented by

BRIAN M. BOYNTON, AIMEE LEE, PATRICIA M. MCCARTHY,
JUSTIN REINHART MILLER; MATHIAS RABINOVITCH, Office of
Assistant Chief Counsel, International Trade Litigation,
United States Bureau of Customs and Border Protection,
New York, NY.

---

Before NEWMAN, PROST, and HUGHES, *Circuit Judges*.

NEWMAN, *Circuit Judge*.

Appellant Byungmin Chae appeals the decision of the
United States Court of International Trade ("CIT"), which
sustained the denial of Mr. Chae's application for a cus-
toms broker license.[1] The CIT affirmed the ruling of United
States Customs and Border Protection ("Customs" or
"CBP") that Mr. Chae did not achieve the required passing
grade of at least 75 percent on the Customs Broker License
Examination ("CBLE"), which Mr. Chae sat for in April
2018. *See* 19 U.S.C. § 1641(b)(2) (stating that the Secretary
of the Treasury "may conduct an examination to determine
the applicant's knowledge of customs and related laws, reg-
ulations and procedures, bookkeeping, accounting, and all
other appropriate matters"); 19 C.F.R. § 111.11(a)(4) (es-
tablishing "75 percent or higher" as the passing grade on
the CBLE).  On appellate review, we affirm the decision of
the CIT denying Mr. Chae's customs broker license appli-
cation.[2]

---

[1]    *Chae v. Yellen*, 579 F. Supp. 3d 1343 (Ct. Int'l Trade
2022) ("CIT Op.").

[2]    The CBLE is administered twice a year.  19 C.F.R.
§ 111.13(b).  "Applicants who fail the examination and do
not receive a passing score can retake the exam without
penalty." Sec'y Br. 4 (citing 19 C.F.R. § 111.13(e)).  The rec-
ord before us does not state whether Mr. Chae has retaken
the exam.

BACKGROUND

The CBLE is an 80-question, multiple-choice examination administered by Customs. The directions for the exam state that "**[e]ach question has a single best answer.**" J.A. 413 (Apr. 25, 2018 CBLE, Directions) (emphasis in original). It is an open book examination, and applicants are "responsible for having the following references:"

> Harmonized Tariff Schedule of the United States . . .
>
> Title 19, Code of Federal Regulations . . .
>
> Instructions for Preparation of CBP Form 7501 . . .
>
> Right to Make Entry Directive 3530-002A

*Id.*

The examination is initially scored by Customs. After this initial scoring, 19 C.F.R. § 111.13(f) and 19 U.S.C. § 1641(e) provide a multitiered system of administrative and judicial review. If the passing grade of 75% is not attained, the applicant may request an initial administrative review by the Broker Management Branch of CBP's Office of Trade. *See* 19 C.F.R. § 111.13(f). If the applicant's score remains below 75% after this initial review, the applicant may request a second round of administrative review by the "appropriate Executive Director" of CBP's Office of Trade. *Id.* If an applicant's score remains below 75% after exhausting these two levels of administrative review, the decision to deny a customs broker license may be judicially appealed to the CIT. *See* 19 U.S.C. § 1641(e)(1). If the applicant's requested relief is still not granted, another level of judicial review is available, by appeal to the Court of Appeals for the Federal Circuit. *See* 28 U.S.C. § 1295(a)(5).

Mr. Chae initially received a score of 65% on the April 2018 CBLE. J.A. 330. After being notified of this result, he appealed to CBP's Office of Trade's Broker Management Branch, requesting review of thirteen questions. J.A. 333.

The Broker Management Branch awarded Mr. Chae credit for two additional answers, raising his score to 67.5%. J.A. 351.

Mr. Chae then appealed the Broker Management Branch's decision to the Executive Assistant Commissioner of CBP's Office of Trade, requesting review of the remaining eleven questions for which Mr. Chae was denied credit in his initial administrative appeal. J.A. 354. The Executive Assistant Commissioner awarded Mr. Chae credit for three more of his answers, raising his score to 71.25%. J.A. 398.

Mr. Chae then judicially appealed to the CIT, seeking review of five of the remaining questions for which he had not received credit.[3] CIT Op. at 1348. The CIT granted Mr. Chae credit for one question, raising his score to 72.5%. CIT Op. at 1353. However, his score remained below 75%.

Mr. Chae appeals to our court. He focuses on three of the remaining questions for which he was denied credit, pointing out that a decision in his favor on two of these questions will raise his score to the passing grade 75%. Chae Br. 3. At issue are Questions 5, 27, and 33 of the April 2018 CBLE.

STANDARD OF REVIEW

In assessing CBP's ultimate licensing decision, "[c]onsistent with the broad powers vested in the Secretary [of the Treasury] for licensing customs brokers under 19 U.S.C. § 1641, the denial of a license can be overturned only if the decision was arbitrary, capricious, an abuse of

---

[3]    Mr. Chae initially appealed the Executive Assistant Commissioner's decision to the CIT requesting review of seven of the remaining questions for which he had not received credit. J.A. 296. However, Mr. Chae withdrew his challenges to two of those questions. CIT Op. at 1348 n.3.

discretion, or otherwise not in accordance with the law." *Kenny v. Snow*, 401 F.3d 1359, 1361 (Fed. Cir. 2005) (citing 5 U.S.C. § 706).

Within that framework, decisions as to individual CBLE questions are reviewed for support by substantial evidence, as detailed in *Kenny*:

> Underpinning a decision to deny a license arising from an applicant's failure to pass the licensing examination are factual determinations grounded in examination administration issues—[including] the allowance of credit for answers other than the official answer—which are subject to limited judicial review because "[t]he findings of the Secretary [of the Treasury] as to the facts, if supported by substantial evidence, shall be conclusive."

401 F.3d at 1361 (quoting 19 U.S.C § 1641(e)(3)). In *Kenny*, we also wrote that "[o]n questions of substantial evidence, we review the decisions of the Court of International Trade 'by stepping into [its] shoes . . . and duplicating its review.'" *Id.* (quoting *Taiwan Semiconductor Indus. Ass'n v. Micron Tech., Inc.*, 266 F.3d 1339, 1343 (Fed. Cir. 2001)).

The CIT has granted examinees credit on appeal when:

> (1) the omission of relevant statutory or regulatory language would result in the question falsely characterizing the applicable provision, (2) the inclusion or omission of language would result in "the question's incorrect use of" a relevant term, or (3) the inclusion or omission of language would result in the question "not contain[ing] sufficient information [for an applicant] to choose an answer."

CIT Op. at 1353 (first citing *Harak v. United States*, 30 Ct. Int'l Trade 908, 928 (2006); and then quoting *O'Quinn v. United States*, 24 Ct. Int'l Trade 324, 328, 100 F. Supp. 2d 1136, 1140 (2000)).

DISCUSSION

To achieve a passing score of at least 75%, Mr. Chae must obtain credit for at least two of the three questions discussed in this appeal.  Mr. Chae argues that there is more than one correct answer among the multiple choices for Question 5, that Question 27 was not sufficiently clear, and that Question 33 does not provide sufficient information to reach the answer selected by Customs.  *See* Chae Br. 1–2.  Conversely, the appellees maintain that there is a single "best answer" to each question.  Sec'y Br. 13, 15, 19.

I.

*Question 5*

Question 5 of the April 2018 CBLE asks:

**5.** Which of the following customs transactions is **NOT** required to be performed by a licensed customs broker?

A.  Temporary Importation under Bond

B.  Transportation in bond

C.  Permanent Exhibition Bond

D.  Trade Fair Entry

E.  Foreign Trade Zone Entry

J.A. 417 (emphasis in original).

1. Parties' Arguments

Mr. Chae selected choice E.  Customs designated choice B as the correct answer.

Mr. Chae does not dispute that choice B is a correct answer; he argues that choice E is also correct.  He argues that "E. Foreign Trade Zone Entry" is correct because "there is no 'foreign trade zone entry' term itself in the regulation," and therefore "there is no reason to believe the

entry here is the type of port of entry as claimed by CBP."
Chae Br. 1. Mr. Chae asserts that, because the term does
not exist within Title 19 of the C.F.R., examinees who are
new to the industry will interpret the term to mean "the
act of bringing [goods] to the U.S. territory," also noting
that "some shipments can be cleared if you claim your own
goods" under 19 C.F.R. § 111.2(a)(2)(i). Chae Br. 1.

At the CIT, Mr. Chae argued that the "common under-
standing" of the term "entry" could reasonably refer to the
process of "admission" set forth in 19 C.F.R. § 146.32(a)(1).
*See* CIT Op. at 1354–55.

The appellees argue that 19 C.F.R. § 111.2(a) supports
their position. *See* Sec'y Br. 13–14. Section 111.2(a)(1) re-
cites a general requirement for a person to obtain a cus-
toms broker license to transact customs business:

> General. Except as otherwise provided in para-
> graph (a)(2) of this section, a person must obtain
> the license provided for in this part in order to
> transact customs business as a broker.

19 C.F.R. § 111.2(a)(1). To support CBP's selected answer,
appellees point to § 111.2(a)(2), which lists "[t]ransactions
for which license is not required" as follows:

(i)   For one's own account. . . .

(ii)  As [an] employee of [a] broker . . . .

(iii) Marine transactions. . . .

(iv)  Transportation in bond. . . .

(v)   Noncommercial shipments. . . .

(vi)  Foreign trade zone activities. . . .

19 C.F.R. § 111.2(a)(2).

To rebut Mr. Chae's contentions, the appellees point to
19 C.F.R. § 146.62, titled "Entry" within Part 146 of Title
19 governing "Foreign-Trade Zones," and argue that a

"question or answer choice need not reflect the precise wording of the regulation in order to be valid." Sec'y Br. 13–14 (quoting *Harak*, 30 Ct. Int'l Tr. at 922). The appellees assert that "E. Foreign Trade Zone Entry" reasonably refers to making entry of merchandise from a foreign trade zone as governed by § 146.62, and that this type of entry is not exempted from the license requirement set forth in 19 C.F.R. § 111.2(a)(1).

## 2. Analysis

Mr. Chae argued to the CIT that "E. Foreign Trade Zone Entry" in Question 5 does not reasonably clarify whether it is referring to entry *into* a foreign trade zone as governed by 19 C.F.R. § 146.32(a)(1) or entry *from* a foreign trade zone as governed by 19 C.F.R. § 146.62. Because the parties "agree[d] that the process of admission set forth in [19 C.F.R. § 146.32(a)(1)] does not constitute 'customs business' that is required to be performed by a licensed customs broker," CIT Op. at 1354, we find that CBP's decision to deny Mr. Chae credit for Question 5 is not supported by substantial evidence.

However, granting Mr. Chae credit for his answer to Question 5 does not, in and of itself, provide the requisite passing score on the CBLE.

## II.

### *Question 27*

Question 27 of the April 2018 CBLE asks:

**27.** Which of the following mail articles are not subject to examination or inspection by Customs?

A. Bona-fide gifts with an aggregate fair retail value not exceeding $800 in the country of shipment

B. Mail packages addressed to officials of the U.S. Government containing merchandise

C. Diplomatic pouches bearing the official seal of France and certified as only containing documents

D. Personal and household effects of military and civilian personnel returning to the United States upon the completion of extended duty abroad

E. Plant material imported by mail for purposes of immediate exportation by mail

J.A. 425.

### 1. Parties' Arguments

Mr. Chae selected choice B. Customs designated choice C as the correct answer.

Mr. Chae argues that Question 27 was not sufficiently clear. He states that "cbp can not [sic] assume all packages quoted in the exam are all international," so "[a package's origin] is not clear if it was not provided." Chae Br. 2. Mr. Chae argues that a person taking the examination could reasonably infer that answer B is referring to packages of domestic origin. Mr. Chae further argues that "some merchandises are allowed to pass free of duty without issuing an entry which is not subject to examination or inspection by CBP" under 19 C.F.R. § 145.37, noting that "without issuing an entry cbp can still inspect" is not in Title 19 of the C.F.R. Chae Br. 2.

Section 145.37 specifies three classes of merchandise that "shall be passed free of duty without issuing an entry":

(a) *Mail articles for copyright.* Mail articles marked for copyright which are addressed to the Library of Congress, to the U.S. Copyright Office, or to the office of the Register of Copyrights, Washington, DC . . .

(b) *Books, engravings, and other articles.* [Certain books, engravings, etchings, and other articles] when they are addressed to the Library of

10                                              CHAE v. YELLEN

Congress or any department or agency of the U.S.
Government.

(c) *Official government documents.* Other mail
articles addressed to offices or officials of the U.S.
Government, believed to contain only official docu-
ments, [though] [s]uch mail articles, when believed
to contain merchandise, shall be treated in the
same manner as other mail articles of merchandise
so addressed.

19 C.F.R. § 145.37.

The appellees argue that CBP's designated best answer
is supported by other portions of 19 C.F.R. § 145, including:

§ 145.2(b) *Generally.* All mail arriving from out-
side the Customs territory of the United States
which is to be delivered within the Customs terri-
tory of the United States . . . is subject to Customs
examination . . .

§ 145.38 Mail articles bearing the official seal of a
foreign government with which the United States
has diplomatic relations, accompanied by certifi-
cates bearing such seal to the effect that they con-
tain only official communications or documents,
shall be admitted free of duty without Customs ex-
amination.

The appellees argue that it is unreasonable for an ex-
aminee to argue that the examination question could relate
to domestic shipments, for the purpose of the exam is "to
determine the applicant's knowledge of customs and re-
lated laws, regulations and procedures, bookkeeping, ac-
counting, and all other appropriate matters." *Rudloff v.
United States*, 19 Ct. Int'l Tr. 1245, 1246–47 (1995) (quot-
ing 19 U.S.C. § 1641(b)(2)).  The appellees state that "[a]
reasonable examinee would presume that all answer
choices concerned an importation of mail articles into the
United States." Sec'y Br. 16.

The appellees then argue that Mr. Chae's reliance on 19 C.F.R. § 145.37 is "misplaced," as section 145.37(c) "distinguishes between mail articles that contain only official documents and mail articles that contain merchandise." Sec'y Br. 16. The appellees point out that, under section 145.37(c), mail articles containing *only official documents* are passed free of duty without issuing an entry, while articles containing *merchandise* shall be treated in the same manner as other mail articles of merchandise so addressed. *See* 19 C.F.R. § 145.37(c) *supra*. Thus the packages containing merchandise mentioned in choice B are subject to Customs examination in accordance with 19 C.F.R. § 145.2(b).

The appellees also argue that section 145.37(c) is not responsive to Question 27, asserting that section 145.37(c) "does not address whether certain mail articles are subject to 'examination' by CBP, but rather concerns how the articles should be treated for entry and duty purposes." Sec'y. Br. 17.

## 2. Analysis

The CIT concluded that "Customs' decision to deny [Mr. Chae] credit for Question 27 was supported by substantial evidence." CIT Op. at 1361. The CIT determined that "Customs determined reasonably that Question 27 presumes that the mail articles described in the question are imported into the United States" based on the purpose of the CBLE as recited in 19 U.S.C. § 1641(b)(2) and the references recommended to the examinees in the CBLE's directions. *Id.* at 1360. The CIT also determined that 19 C.F.R. § 145.37(c) distinguishes mail articles that contain official documents from those that contain merchandise. *Id.* at 1361. The CIT further held that:

> 19 C.F.R. § 145.37 . . . is not responsive to question 27, which instructs the applicant to determine "[w]hich of the following mail articles are not *subject to examination or inspection by Customs*."

> 19 C.F.R. § 145.37 does not address whether cer-
> tain mail articles are subject to "examination" or
> "inspection" by Customs. Rather, this provision ad-
> dresses whether the articles "shall be passed free
> of duty without issuing an entry." Whether an arti-
> cle "shall be passed free of duty" is a distinct ques-
> tion from whether an article "shall be subject to
> examination or inspection by Customs." On this ba-
> sis, 19 C.F.R. § 145.37 does not support plaintiff's
> selection of answer choice (B).

CIT Op. at 1361 (emphasis in original) (citations omitted).

We agree with the CIT that the regulations are suffi-
ciently clear, and that choice B is not a reasonable selection
in light of 19 C.F.R. §§ 145.2(b), 145.37(c), and 145.38. Sec-
tion 145.2(b) states that "[a]ll mail arriving from outside
the Customs territory of the United States which is to be
delivered within the Customs territory of the United
States . . . is subject to Customs examination." Under
§ 145.37(c), "mail articles [addressed to offices or officials
of the U.S. Government], when believed to contain mer-
chandise, shall be treated in the same manner as other
mail articles of merchandise so addressed." Thus the pack-
ages in choice B cannot be exempted by section 145.37(c) as
Mr. Chae argues, and must be subject to Customs exami-
nation under section 145.2(b), regardless of any difference
in meaning between "shall be passed free of duty" and "ex-
amination or inspection by Customs." Section 145.38 di-
rectly supports answer choice C.

Mr. Chae's additional arguments do not negate the con-
clusion that choice C is the best answer. CBP's decision to
deny Mr. Chae credit for his answer to Question 27 is sup-
ported by substantial evidence, and thus the CIT's decision
as to this question is affirmed.

III.

### Question 33

Question 33 of the April 2018 CBLE asks:

**33.** What is the **CLASSIFICATION** of current-production wall art depicting abstract flowers and birds that is mechanically printed, via lithography, onto sheets of paper, the paper measuring .35 mm in thickness that have been permanently mounted onto a backing of .50 mm thick paperboard?

A. 4911.91.2040

B. 4911.91.3000

C. 4911.99.6000

D. 9701.10.0000

E. 9702.00.0000

J.A. 426 (emphasis in original).

#### 1. Parties' Arguments

Mr. Chae selected choice E. Customs designated choice B as the correct answer.

Mr. Chae argues that the wording of Question 33 does not provide sufficient information to identify the correct answer. Chae Br. 2 (pointing to ambiguity in Question 33, stating that "no further detail is identified"). Mr. Chae focuses on the term "current-production," arguing that the term should be construed as describing a "process which was not discontinued" and that Question 33 identifies "no further detail on this shipment." Chae Br. 2. Accordingly, he asserts that the production date of the lithograph in Question 33 is ambiguous. The classification that Mr. Chae selected, 9702.00.0000, covers "[o]riginal engravings, prints and lithographs, framed or not framed," with no mention of the age of the products. Harmonized Tariff Schedule of the United States (2017) Basic Edition ("HTSUS"), Chapter 97, p. 97-2.

The appellees describe this question as "evaluat[ing] the ability of an applicant to interpret and apply the HTSUS" and its General Rules of Interpretation ("GRIs"). Sec'y Br. 18 (quoting CIT Op. at 1363). The GRIs are principles that govern the classification of goods under the HTSUS and must be applied in numerical order. *See BASF Corp. v. United States*, 482 F.3d 1324, 1325–26. GRI 1 states that "classification [of goods] shall be determined according to the terms of the headings and any relative section or chapter notes." HTSUS, GRIs, GN p.1. Furthermore, we have written that "[s]ection and chapter notes 'are not optional interpretive rules, but are statutory law, codified at 19 U.S.C. § 1202.'" *Aves. in Leather, Inc. v. United States*, 423 F.3d 1326, 1333 (Fed. Cir. 2005) (quoting *Park B. Smith, Ltd. v. United States*, 347 F.3d 922, 927 (Fed. Cir. 2003).

The appellees support CBP's designation of choice B as the best answer by citing HTSUS 4911.91.3000, which covers:

> Other printed matter, including printed pictures and photographs: Other: Pictures, designs and photographs: Printed not over 20 years at time of importation: Other: Lithographs on paper or paperboard: Over 0.51 mm in thickness.

HTSUS, Chapter 49, p. 49-4.

The appellees note that the lithograph in Question 33 is described as wall art mechanically printed onto sheets of "paper measuring .35 mm in thickness that have been permanently mounted onto a backing of .50 mm thick paperboard." J.A. 426; *see also* Sec'y Br. 18. Thus "the combined thickness of the lithograph and its mounting is 0.85 mm," Sec'y Br. 19, which is the thickness that should be used for classification purposes, as explained in HTSUS Chapter 49, Additional U.S. Note 1:

> 1. For the purposes of determining the classifica-
> tion of printed matter produced in whole or in part
> by a lithographic process, the thickness of such
> printed matter is that of the thinnest paper con-
> tained therein, except that the thickness of a per-
> manently mounted lithograph is the combined
> thickness of the lithograph and its mounting.

HTSUS, Chapter 49, p. 49-1. Thus the appellees argue that
the wall art in Question 33 is a lithograph "[o]ver 0.51 mm
in thickness." *Id.* at p. 49-4; *see also* Sec'y Br. 19.

To rebut Mr. Chae's contentions, the appellees argue
that "the term 'current production' refers to the time in
which the merchandise was printed, and, thus, reasonably
means that the printed lithography is not over 20 years
old." Sec'y Br. 19–20. The appellees state that "[t]he ques-
tion does not contain the phrase 'current production pro-
cess' and '[e]xaminees cannot be permitted to reach
conclusions by taking a portion of the question and formu-
lating their own factual scenarios.'" *Id.* at 20 (quoting
*Dunn-Heiser v. United States*, 29 Ct. Int'l Tr. 552, 559–60
(2005)). Appellees also note that "[e]xaminees . . . are not
permitted to 'unilaterally rewrite the question.'" *Id.* (quot-
ing *Dunn-Heiser*, 29 Ct. Int'l Tr. at 560).

The appellees also argue Mr. Chae's answer, choice E,
cannot be correct considering HTSUS Chapter 97, Note 2:

> 2. For the purposes of heading 9702, the expression
> "original engravings, prints and lithographs"
> means impressions produced directly, in black and
> white or in color, of one or of several plates wholly
> executed by hand by the artist, irrespective of the
> process or of the material employed by him, but not
> including any mechanical or photomechanical pro-
> cess.

HTSUS, Chapter 97, p. 97-1 (emphasis in original).

16                                                    CHAE v. YELLEN

## 2. Analysis

HTSUS Chapter 97, Note 2 explicitly excludes lithographs produced by "any mechanical or photomechanical process" from heading 9702. *Id.* Although the description of "current-production" strains the application of "[p]rinted not over 20 years at time of importation," it is not inconsistent. J.A. 426; HTSUS, Chapter 49, p. 49-4. We agree with the CIT "that Customs' decision to deny [Mr. Chae] credit for [Q]uestion 33 was supported by substantial evidence." CIT. Op. at 1364.

We conclude that CBP's decision to deny Mr. Chae credit for his answer to Question 33 is supported by substantial evidence, and thus the CIT's decision as to this question is affirmed.

## CONCLUSION

We affirm the CIT's decision on Questions 27 and 33. Thus even though we find CBP's denial of credit for Question 5 unsupported by substantial evidence, Mr. Chae cannot attain a passing grade of at least 75%. Absence of a passing grade on the CBLE constitutes lawful grounds for denial of Mr. Chae's application for a customs broker license. *See Kenny*, 401 F.3d at 1361 ("Among the lawful grounds for denying a license is the failure to pass the licensing examination." (citing 19 U.S.C. § 1641(b)(2); 19 C.F.R. § 111.11(a)(4); 19 C.F.R. § 111.16(b)(2))). CBP's denial of Mr. Chae's application is not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. The CIT's decision is affirmed.

## AFFIRMED

## COSTS

Each party shall bear its costs.

NOTE: This order is nonprecedential.

# United States Court of Appeals
# for the Federal Circuit

_____

**BYUNGMIN CHAE,**
*Plaintiff-Appellant*

v.

**JANET YELLEN, SECRETARY OF THE
TREASURY, ALEJANDRO MAYORKAS,
SECRETARY OF HOMELAND SECURITY,
DEPARTMENT OF THE TREASURY,
DEPARTMENT OF HOMELAND SECURITY,
UNITED STATES,**
*Defendants-Appellees*

_____

2022-2017

_____

Appeal from the United States Court of International
Trade in No. 1:20-cv-00316-TMR, Judge Timothy M. Reif.

_____

**ON PETITION FOR PANEL REHEARING AND
REHEARING EN BANC**

_____

Before MOORE, *Chief Judge*, NEWMAN, LOURIE, DYK,
PROST, REYNA, TARANTO, CHEN, HUGHES, STOLL,
CUNNINGHAM, and STARK, *Circuit Judges*.

PER CURIAM.

Case: 22-2017    Document: 38    Page: 87    Filed: 09/12/2023

2                                                         CHAE v. YELLEN

# O R D E R

Byungmin Chae filed a combined petition for panel rehearing and rehearing en banc. The petition was referred to the panel that heard the appeal, and thereafter the petition was referred to the circuit judges who are in regular active service.

Upon consideration thereof,

IT IS ORDERED THAT:

The petition for panel rehearing is denied.

The petition for rehearing en banc is denied.

The mandate of the court will issue June 20, 2023.

FOR THE COURT

June 12, 2023                              /s/ Jarrett B. Perlow
Date                                       Jarrett B. Perlow
                                           Acting Clerk of Court

DINGLER, JOSEPH # 0998969
100 N. Lamar
Ft. Worth, TX 76196

LEGAL MAIL



Legal Mail

Court of Appeals - Federal Circuit
c/o Cir Admin office - Rule 5 Complaint
Howard T. Markey Courts Bldg
717 Madison Place NW
Washington DC